THE STATE OF OHIO, APPELLEE, *v.* OLDERMAN, APPELLANT.

[Cite as State v. Olderman (1975), 44 Ohio App. 2d 130.]

(No. 33580—Decided May 22, 1975.)

*Mr. John T. Corrigan,* for appellee.
*Mr. Ignatius B. Trombetta,* for appellant.

CORRIGAN, J. On May 4, 1973, defendant John Olderman was indicted on four counts of extortion, R. C. 2907.01; four counts of blackmail, R. C. 2901.38, and two counts of malicious destruction of property, R. C. 2909.01.

On July 27, 1973, the prosecution filed a motion to obtain an exemplar of defendant's vioce,[1] which motion was granted in a court order October 16, 1973. The defense objected to this order and requested a hearing which was held November 16, 1973. At this hearing the prosecution called a Westlake, Ohio police lieutenant who testified that pursuant to his investigation of an osteopathic doctor's complaint of receiving harassing phone calls, he installed a recording device on the doctor's telephone and listened to the recorded conversations with the harrassing caller. The court then overruled the defendant's objections to its original order and further directed the defendant to cooperate with Cleveland Police personnel in obtaining the voice exemplar. The court further found merit to a defense request that the court set guidelines or standards for the taking of the voice exemplar.

---

[1] On appeal, the prosecution states that the exemplar recording is to be used for "a voice spectogram," which we presume to mean sound spectrographic analysis. *See* n. 6, *infra.*

At a subsequent hearing, on November 28, 1973, the court left the mechanics of time, place, and procedure for taking the voice exemplar to prosecution and defense counsel stating that defense counsel had the right to be present and to represent the defendant at all stages and as to all aspects of the taking of the voice exemplar. The court threatened sanctions if either side unreasonably failed to cooperate in the taking of the voice exemplar.

On January 15, 1974, the court held a hearing on the prosecution's motion to show cause why the defendant should not be held in contempt for his failure to submit to the voice exemplar. The defense argued that it was unable to agree with the prosecution on standards, that the phrases submitted by the prosecution to be uttered by the defendant tended to show substantive guilt rather than simply identification and that upon advice of counsel the defendant refused to submit to the procedure. The prosecution showed the court a letter setting forth the phrases that the defendant had refused to utter for the exemplar.[2] The court ordered these phrases repeated for the exemplar and reiterated its threatened contempt sanction if the defendant refused to comply with the court's prior order.

Defense counsel still refused arguing that the voice exemplar violated defendant's rights under the Fourth and Fifth Amendments to the U. S. Constitution. Determining that defendant and counsel were fully aware of the consequence of their refusal, the court adjudged defendant in contempt and this appeal followed.

Appellant has assigned four errors:

"(1) The Court's order requiring the furnishing of a voice print is in violation of the Fifth Amendment.

---

[2] The phrases requested by the prosecution are as follows:

"Write the name Big Bob on it." "I told you I wouldn't bother you." "I told you where." "I know where." "In any way, shape or form." "Monday, Tuesday, Wednesday." "Petrella and drive away." "My way or no way, doctor." "I'll tell you what, Doc." "One way or the other." "Suppose you got on a subway." "Option number one." "Option number two." "I don't know." "Get in your car and drive away." "I'm going to give you a break over the week-end." "I will do whatever has to be done." "You turn around and I'll tell you how to do it."

"(2) The Court's order requiring the furnishing of a voice print is in violation of the Fourth Amendment.

"(3) The Court's order requiring the voice print and the use of certain court ordered phrases violated the Fourteenth Amendment.

"(4) The Court's order requiring the furnishing of a voice print is in error since a voice print is inadmissible into evidence for identification or testimony purposes on the grounds that voice prints and spectrograms are scientifically unproven and inaccurate."

Assignments of error Nos. 1 and 2 maintain that the court-ordered voice exemplar violates the Fifth Amendment's prohibition against compulsory self-incrimination and the Fourth Amendment's prohibition against unreasonable searches and seizures. Appellant argues that the court-ordered voice exemplar constitutes an invasion of his body—that is, his voice—in violation of the Fourth Amendment and that such voice exemplar would compel him to be a witness against himself in violation of the Fifth Amendment. Assignment of error No. 3 maintains that the court order denied appellant due process of law guaranteed under the Fourteenth Amendment arguing that the court has interfered with the pre-trial process by interjecting itself on the side of the prosecution and further that the court-ordered phrases are unduly suggestive, testimonial in character, and thus prejudicial. Appellant's assignments of error Nos. 1, 2 and 3 and his constitutional arguments shall be consolidated and answered together. Appellant's arguments are contrary to the vast weight of authority from other jurisdictions, and we conclude that his assignments of error are without merit.

Both sides rely upon the recent decision of *United States* v. *Dionisio* (1973), 410 U. S. 1. Antonio Dionisio as well as some twenty others had been subpoenaed before a special federal grand jury investigating unlawful gambling activities. Dionisio had repeatedly refused to submit to a recorded voice exemplar to be compared with previously obtained wiretap recordings for identification purposes. Dionisio appealed his civil contempt conviction. In *Dionisio*

the United States Supreme Court held that court-ordered voice exemplars involve no more than the compelled display of identifiable physical characteristics which infringe upon no interest protected by the privilege against compulsory self-incrimination. The *Dionisio* court noted that such conclusion was supported by its previous holdings in *Holt* v. *United States* (1910), 218 U. S. 245; *Schmerber* v. *California* (1966), 384 U. S. 757; *Gilbert* v. *California* (1967), 388 U. S. 263, and *United States* v. *Wade* (1967), 388 U. S. 218.

In *Gilbert* the court concluded that handwriting exemplars were not protected by the privilege against self-incrimination, stating that "[o]ne's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection." 388 U. S. at 266-67. Moreover, in *Wade* the court found no error in compelling an accused bank robber ". . . to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, [which] was not compulsion to utter statements of a 'testimonial' nature," the accused was only ". . . required to use his voice as an identifying physical characteristic, not to speak his guilt." 388 U. S. at 222-23.

Similarly, the Ohio Supreme Court in *State* v. *Ostrowski* (1972), 30 Ohio St. 2d 34, held that a handwriting exemplar, used solely for identification purposes, was merely an identifying physical characteristic and, as such, outside the scope of the Fifth Amendment privilege against self-incrimination, even if the words written are identical to the words contained in a writing directly linked to the crime.[3] The Su-

---

[3]James Ostrowski, a juvenile, was found delinquent on charges of breaking into two houses and setting fires. In the course of one of these incidents, "a four-word obscenity" had been painted on a bedroom dresser mirror. Upon their first visit to Ostrowski's home to question him about the fires police officers requested and were given his handwriting exemplar. 30 Ohio St. 2d at 35.

preme Court concluded that "[a]n examination of the exemplar clearly indicates that it contains nothing 'testimonial' in character, and from an evidentiary standpoint it was used solely for handwriting identification purposes. While it did contain three of the four words printed on the mirror, it also contained, on what appears to be a standard form of the detective bureau, James Ostrowski's printing of some fourteen names, three street addresses, and all of the arabic numerals. The expert testimony, both of the prosecution and the defense, was not limited merely to a comparison of the three words which appeared both on the mirror and on the exemplar." *Id.* at 38-39. The United States Supreme Court denied Ostrowski's petition for certiorari.[4]

The highest courts of other states have also found no denial of the Fifth Amendment privilege against self-incrimination in the compulsory submission to tests for physical characteristics such as handwriting and voice exemplars. In a procedural setting similar to the instant case the Supreme Court of South Carolina found no denial of the privilege against self-incrimination or the denial of the right to a fair trial in requiring a defendant, during a trial recess, to speak into a telephone so that his voice could be recorded for comparison with the voice of an anonymous person whose call reporting the homicide to police had been automatically recorded. The trial court ordered that the exemplar be recorded out of the presence of the jury by the same police dictaphone that had recorded the anonymous call; the supreme court held such order to be "tantamount to a pre-trial requirement" that the prosecution had requested but to which the defendant had refused to submit. Both recordings were played to the jury for their aural comparison for identification. *State* v. *Vice* (1972), 259 S. C. 30, 190 S. E. 2d 510. Appellant's argument of a denial of his privilege against self-incrimination is therefore without merit.

Appellant further argues that the court-ordered voice exemplar violates his Fourth Amendment right against unreasonable searches and seizures. When a defendant's per-

---

[4]*James Ostrowski* v. *Ohio* (1972), 409 U. S. 890.

son is the source of the desired evidence, the test of reasonableness is twofold. First, the procedure which must be used to obtain the evidence must neither shock the conscience nor offend society's traditional sense of justice. *Rochin* v. *California* (1952), 342 U. S. 165. Second, the search may be made only upon a showing of probable cause. *Schmerber* v. *California* (1966), *supra*.

Clearly, requiring a person to speak, an activity engaged in daily by the vast majority of the public, cannot, in any sense, be considered the type of conduct which offends common notions of decency and fairness. In *Katz* v. *United States* (1967), 389 U. S. 347, the Supreme Court said that: ''What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.'' *Id.* at 351. Moreover, the court in *Dionisio, supra*, said: ''The physical characteristics of a person's voice, its tone and manner, as opposed to the content of a specific conversation, are constantly exposed to the public. Like a man's facial characteristics, or handwriting, his voice is repeatedly produced for others to hear. No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world.'' 410 U. S. at 14. Therefore, a court-ordered voice exemplar is not the type of procedure that could be considered an unreasonable intrusion of the defendant's person.

The record in this case clearly establishes the requirement of a showing of probable cause. Olderman had already been indicted when the prosecution requested the court-ordered voice exemplar. The court conducted a hearing wherein it was established by testimony that Olderman and a ''Bob Petrella'' were former patients of the victim, that the anonymous telephone caller had mentioned the name of Bob Petrella, and that Olderman and Petrella were known associates; that the victim had singled out Olderman and Petrella as probable suspects based upon what was said over the telephone and further that based on the victim's personal knowledge of Olderman, he noticed that both Olderman and the anonymous caller had the same distinguishing speech characteristic, a stutter when excited, which was

demonstrated on an existing tape. Appellant's argument of an unreasonable search and seizure is therefore without merit.

Finally, appellant argues that the court's ordering a voice exemplar violates the due process clause of the Fourteenth Amendment as an interference with the pre-trial process. Appellant further argues that the phrases he was ordered to say were unduly suggestive.

As the defendant's voice is an identifying physical characteristic and thus real evidence subject to proper seizure and use by the prosecution, the court acted within its power in ordering the prosecution's motion for a recorded exemplar. Moreover, the lower court acted affirmatively in assuring defendant's rights to be heard on the issue of whether the exemplar should be ordered, in assuring representation by counsel at every stage of the proceedings, and in reviewing the substance of the exemplar to assure its non-prejudicial content. This was not a denial of due process of law but rather a proper implementation of the role of the court.[5]

Moreover, the phrases submitted by the prosecution, approved and ordered by the court for the exemplar contain nothing obviously "testimonial" in character. The fact that the words chosen for identification purposes are identical to words contained in a communication directly linked to the crime does not render the exemplar testimonial in character and thereby unduly suggestive in derrogation of constitutional rights. *Wade, supra* at 222; *Ostrowski, supra* at 38-40. Appellant's argument that the court's ordering a voice exemplar was a denial of due process of law is therefore without merit. Appellant's assignments of error Nos. 1, 2 and 3 are therefore overruled.

Appellant's assignment of error No. 4 argues that in any event ordering a voice exemplar was error as such recordings[6] are scientifically unproven, inaccurate and thus inadmissible for any purpose.

---

[5]The court's role in supervising the ordering and taking of such exemplars is analogous to its function in supervising discovery under Criminal Rule 16.

[6]The technical name for a recorded voice exemplar intended for

138

This court cannot rule at this pre-trial stage of the instant case *whether* the voice exemplar sought by the prosecution and ordered by the court *will be* admissible when and if it is proffered into evidence. It is, nevertheless, this court's conclusion that voice exemplars are, *when properly qualified*, admissible. If our conclusion were to the contrary—that voice exemplars were inadmissible for any purpose as appellant argues—fairness would dictate that we modify the contempt conviction accordingly. Our conclusion that voice exemplars are admissible is in accord with the growing weight of authority from other jurisdictions on the question.

The standard of admissibility of scientific evidence such as voice exemplars was set forth in the early federal decision of *Frye* v. *United States* (1923), 54 App. D. C. 46, 47, 293 F. 1013, 1014, as follows: "* * * Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." Although there are numerous recent decisions under the *Frye* standard holding that voiceprint spectrogram exemplars have not achieved sufficient scientific acceptance for reliability and are thus inadmissible,[7] we find more persuasive the growing weight of authority finding no inhibition to the admission of recorded

---

graphic analysis is a sound spectrograph, invented by Bell Telephone Laboratories, Inc. researches in 1941, which by electronic process produces a pictorial representation of sounds. See 19 Am. Jur. Proof of Facts 423, Spectrogram Voice Identification §10.

[7]*See, e. g., People* v. *Law* (1974), 40 Cal. App. 3d 69, 114 Cal. Rptr. 708; *People* v. *King* (1968), 266 Cal. App. 2d 437, 72 Cal. Rptr. 478; *State* v. *Cary* (1967), 49 N. J. 343 [remanded for a finding as to admissibility], (1969), 53 N. J. 256 [remanded for further testimony], (1970), 56 N. J. 16 [aff'd]. Cf. *United States* v. *Addison* (D. C. Cir. 1974), 498 F. 2d 741.

voice exemplars, offered in the form of a scientific spectrographic analysis corroborated by expert witnesses. *See, e. g., Hodo* v. *Superior Court, Riverside County* (1973), 30 Cal. App. 3d 778, 106 Cal. Rptr. 547; *Alea* v. *State* (Fla. App. 1972), 265 So. 2d 96; *Worley* v. *State* (Fla. App. 1972), 263 So. 2d 613; *State, ex rel. Trimble,* v. *Hedman* (1971), 291 Minn. 442 [as to probable cause for an arrest warrant]; *State* v. *Andretta* (1972), 61 N. J. 544; *United States* v. *Wright* (1967), 17 U. S. C. M. A. 183, 37 C. M. R. 447; *United States* v. *Franks* (6th Cir. 1975), 511 F. 2d 25; *United States* v. *Askins* (D. Md. 1972), 351 F. Supp. 408 [all holding spectrographic evidence admissible].

The Supreme Judicial Court of Massachusetts in a case decided March 27, 1975, *Commonwealth* v. *Lykus* (1975), —— Mass. —— [initially reported in 43 L. W. 2434], found that spectrographic analysis meets the "general acceptance in scientific community" test and that carefully scrutinized expert testimony on voiceprint can be used against a criminal defendant.

We therefore conclude that the prosecution's spectrographic voice-print exemplar is, if properly qualified and shown to be reliable, admissible for identification purposes only. Assignment of error No. 4 is therefore without merit and is overruled. The judgment is affirmed.

*Judgment affirmed.*

MANOS and PARRINO, JJ., concur.