DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Damario McCall has appealed from a decision of the Summit County Common Pleas Court, Juvenile Division, that found him delinquent by reason of two counts of carrying a concealed weapon and one count of parole violation. This Court affirms.
 I.
On September 26, 2000, Officers Starvaggi and Boss of the Akron Police Department were on patrol in an area with a high level of drug activity, prostitution, and assaults. The officers observed Defendant walking near a known drug house, and a woman walking the opposite way on the other side of the street. When the officers returned approximately one or two minutes later they observed Defendant and the woman walking together on the same side of the street. Both appeared very interested in the presence of the officers, and their demeanor seemed nervous and evasive. When the officers turned their police cruiser around, Defendant and the woman cut through two nearby buildings. The officers approached Defendant and asked if he was carrying any weapons. When Defendant responded that he was, the officers immediately handcuffed Defendant and observed that he was wearing a batting glove and carrying a pool ball in one hand. They then asked Defendant if he was carrying any other weapons, and he replied that he also had a gun. The officers then recovered a .38 caliber semi-automatic pistol loaded with hollow point bullets from the waistband underneath Defendant's shirt.
A pretrial was held on October 17, 2000, at which time Defendant's counsel indicated her intent to file a motion to suppress the weapons seized from Defendant as unconstitutionally obtained. On November 14, 2000, Defendant's case proceeded to trial before a magistrate on two counts of carrying concealed weapons and one count of parole violation.[1] Officer Starvaggi testified that Defendant had offered two conflicting accounts of how he came into possession of the weapons. Initially, Defendant indicated that he was carrying the weapons for self-defense because he had recently been robbed of $400. Defendant later told police that the woman he was with gave him the gun in exchange for fake rocks of crack cocaine, and that Defendant himself had loaded the gun and put it in his waistband.
Immediately before trial, the magistrate stated that she had received Defendant's motion to suppress, filed on November 9, 2000,[2] but would not consider the motion because it was untimely. Defendant also moved for a continuance of the trial because Defendant's mother was not present. The magistrate also denied the continuance and, following trial, found Defendant delinquent on all three counts. Defendant timely appealed, asserting three assignments of error.
 II. Assignment of Error Number One
 The court abused its discretion when it failed to consider and denied [Defendant's] motion to suppress, in violation of his rights guaranteed by the Fourth Amendment and Article I, Section 14 of the Ohio Constitution.
In his first assignment of error, Defendant has claimed that the trial court abused its discretion in refusing to consider his motion to suppress. Alternatively, Defendant has asserted that trial counsel's failure to timely file the motion constituted ineffective assistance of counsel. The State has responded, arguing that the motion was properly dismissed because it was not timely filed and that Defendant failed to carry his burden of demonstrating ineffective assistance of counsel.
This Court reviews a trial court's denial of an untimely motion to suppress under an abuse of discretion standard. Akron v. Milewski
(1985), 21 Ohio App.3d 140, 142. An abuse of discretion involves "more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1990),62 Ohio St.2d 151, 157.
A motion to suppress is a prehearing motion.[3] Juv.R. 22(D)(3). "All prehearing motions shall be filed by the earlier of (1) seven days prior to hearing, or (2) ten days after the appearance of counsel." Juv.R. 22(E). In the instant case, Defendant's counsel appeared at a pretrial on October 17, 2000. The deadline for filing a prehearing motion was thus October 27, 2000, and Defendant's filing on November 9, 2000 was untimely.
Where a party fails to timely file a motion, he or she bears the burden of demonstrating "good cause" to excuse the late filing. State v. Estep
(Mar. 19, 1999), Montgomery App. No. 17455, unreported, 1999 Ohio App. LEXIS 989, at *5. The trial court's decision to grant or deny leave to file an untimely motion to suppress is to be reviewed from the point in time that the request to file is made. Id. at *7-8. In this case, counsel for Defendant's only explanation for the late filing was that his secretary was too busy to file the motion earlier. The magistrate denied Defendant's motion without a hearing in the interests of judicial economy and docket management. This Court also notes that, pursuant to Juv.R.22(E), the magistrate might have considered the motion to suppress had it been raised by Defendant at the time the evidence he found objectionable was offered at trial. Defendant failed to avail himself of this opportunity, however, and instead only renewed his motion to suppress at the conclusion of the State's case without any specific factual allegations in support. This Court concludes, therefore, that the magistrate did not abuse her discretion in denying Defendant's motion to suppress without a hearing. Accordingly, Defendant's first argument must fail.
This Court also rejects Defendant's second argument. Defendant has asserted that even if the trial court did not abuse its discretion, his trial counsel's failure to timely file the motion constituted ineffective assistance of counsel in violation of his Sixth Amendment rights. The State has countered, claiming that counsel's untimely filing does not satisfy the standard for ineffective assistance of counsel at trial.
A two-pronged test must be satisfied to determine that the right to effective assistance of counsel has been violated:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. Defendant's demonstration of prejudice requires proof that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph three of the syllabus. This Court must also consider "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695. The burden of proof is borne by the defendant, and he must overcome the strong presumption of the adequacy of counsel's performance and that counsel's action might be sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100. In addition, an attorney properly licensed in Ohio is presumed competent. State v. Lott (1990), 51 Ohio St.3d 160,174.
Because this Court finds the prejudice component of the Strickland
framework dispositive in this case, it will address that aspect of Defendant's argument only. To show prejudice under the Strickland
formulation, Defendant must show that if the motion had been timely filed and a hearing had been granted, there is a reasonable probability that the trial court would have found that the police officers conducted an improper stop of Defendant.
An encounter between police and a citizen is consensual in nature and does not implicate the Fourth Amendment's guarantees against unreasonable searches and seizures, "unless the police officer has by either physical force or show of authority restrained that person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." State v. Taylor (1995),106 Ohio App.3d 741, 747-748. Consensual encounters are those "where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." Id. at 747, citing United States v. Mendenhall
(1980), 446 U.S. 544, 553, 64 L.Ed.2d 497, 508-509. BecauseFourth Amendment protections are not implicated in a consensual encounter, any voluntary responses offered in the course of such an encounter may be used against the person in a criminal prosecution. Florida v. Bostick
(1991), 501 U.S. 429, 439, 115 L.Ed.2d 389, 401.
An investigatory stop, or "Terry stop," on the other hand, does implicate Fourth Amendment guarantees. As a result, an investigatory detention must be based on a reasonable, articulable suspicion of criminal activity. Terry v. Ohio (1968), 392 U.S. 1, 21. Specifically, the police must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Id. at 21-22; see State v. Bobo
(1988), 37 Ohio St.3d 177, 180-81; State v. Andrews (1991),57 Ohio St.3d 86, 87-88. Consent given during a "Terry stop" is therefore only valid if the detaining officer had such a reasonable suspicion. Florida v. Royer (1982), 460 U.S. 491, 501, 75 L.Ed.2d 229,238-39.
Defendant has not pointed to any facts supporting an argument that the officers' approach of Defendant exceeded the bounds of a consensual encounter. There is no indication that Defendant did not feel free to decline to respond to Officer Starvaggi's inquiry as to whether he was carrying any weapons and walk away. Therefore, upon review of the facts presented, this Court finds that the encounter between Defendant and the officers was consensual in nature, and the evidence Defendant gave to the officers was admissible against him in a criminal prosecution.
Defendant's argument that he was prejudiced by trial counsel's failure to timely file the motion to suppress must therefore fail. Defendant's first assignment of error is overruled.
Assignment of Error Number Two
 The court abused its discretion when it denied [Defendant's] motion for a continuance because his mother was not present for his hearing in violation of R.C. 2151.352.
 In his second assignment of error, Defendant has asserted that themagistrate abused her discretion by denying Defendant's motion for acontinuance because his mother was not present. Specifically, Defendanthas argued that R.C. 2151.352 mandates that parents of defendants injuvenile proceedings be present at any hearing involving the child. ThisCourt disagrees.
This Court reviews a trial court's decision to grant or deny a motion for a continuance under an abuse of discretion standard. State v. Unger
(1981), 67 Ohio St.2d 65, syllabus. Review of a trial court's exercise of discretion should employ a balancing test that weighs "any potential prejudice to a defendant [against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." Id. at 67. In the absence of an abuse of discretion, an appellate court must not reverse the denial of a continuance. Id.
R.C. 2151.352 provides, in relevant part:
 A child, his parents, custodian, or other person in loco parentis of such child is entitled to representation by legal counsel at all stages of the [juvenile proceedings] * * * The parents [of any child taken into custody] * * * shall be entitled to * * * be present at any hearing involving the child, and be given reasonable notice of such hearing.
The overall purpose of R.C. 2151.352 is "to insure to the juvenile his right to counsel and/or his right to have his parents present at any hearing." State v. Ostrowski (1972), 30 Ohio St.2d 34, 42. Where the parents are absent from the proceedings but the juvenile is fully and adequately represented by counsel, no possible prejudice to the juvenile results from the parents' absence. Id.
While R.C. 2151.352 entitles the parents to be present at the juvenile proceedings of their child, nothing in that statute mandates such parental presence. Put another way, the statute does not condition the trial court's ability to conduct a juvenile proceeding on the presence of the juvenile's parents when the juvenile is represented by counsel. Moreover, continuances are to be granted only when they are imperative to secure fair treatment of the parties. See Juv.R. 23. Defendant has not shown that any unfair treatment resulted from his mother's failure to appear at his trial. Therefore, this Court concludes that it was not an abuse of discretion for the magistrate to deny Defendant's motion for a continuance. Defendant's second assignment of error is overruled.
Assignment of Error Number Three
 The court erred when it found [Defendant] delinquent for carrying a concealed weapon because the State failed to prove beyond a reasonable doubt the operability of the weapon, in violation of [Defendant's] Due Process rights under the Fourteenth Amendment to the United States Constitution and Article I, Section 16, of the Ohio Constitution.
In his third assignment of error, Defendant has claimed that the State presented insufficient evidence to convict him of carrying a concealed weapon because it failed to establish beyond a reasonable doubt the operability of the firearm. The State has responded, arguing that the totality of the circumstances was sufficient to support an inference of operability.
In reviewing the sufficiency of the evidence before a trial court to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; see, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 386
("`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.").
To be "operable" a firearm must be "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1). In determining operability, the trier of fact "may rely upon circumstantial evidence, including * * * the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2). Accordingly, the trier of fact must evaluate the evidence of a firearm's operability by examining the totality of the circumstances. State v. Murphy (1990), 49 Ohio St.3d 206,208.
In the instant case, a .38 caliber semi-automatic pistol loaded with hollow point bullets, including one in the chamber, was recovered from Defendant's waistband. Defendant offered two explanations for his possession of the firearm: (1) that he was carrying the weapon for self-defense, and (2) that he had obtained the pistol from the woman accompanying him and loaded it himself. Both carrying a pistol for self-defense and loading the weapon with ammunition supports an inference that the pistol is capable of being fired. Moreover, the officer who arrested Defendant and disarmed the weapon testified that it was a loaded, Taurus .380 semi-automatic pistol. See State v. Vargas (May 30, 1990), Lorain App. No. 89CA004665, unreported, at 5 (observing that a police officer's testimony about a recovered firearm supports an inference of the weapon's operability). Therefore, after viewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found beyond a reasonable doubt that the gun was operable. Defendant's third assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ____________________________ BATCHELDER, P.J.
SLABY, J. CONCUR.
[1] Defendant was committed to the Department of Youth Services (DYS) on February 16, 1999 after pleading guilty to charges of grand theft auto, possession of criminal tools, and several accompanying misdemeanor charges. He was later paroled from DYS, and charged with parole violation by reason of not attending school regularly, not maintaining regular contact with his parole officer, and committing the two offenses of carrying a concealed weapon on appeal in this case. Defendant has not appealed the parole violation to this Court.
[2] Apparently, Defendant's motion was filed after the Court had closed on November 9, 2000, and was therefore not docketed until November 13, 2000, the next business day and the day before Defendant's trial. Consequently, there is some ambiguity in the record as to whether Defendant's motion was filed on November 9 or November 13. This ambiguity is irrelevant for purposes of this appeal, however, as Defendant's motion was untimely filed in either circumstance.
[3] Juv.R.2(O) defines "hearing" as any part of a juvenile court proceeding before the court. For clarity, however, this Court will refer to the adjudicatory proceeding in the lower court as the trial.