OPINION
{¶ 1} D.M. appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which adjudicated him to be a delinquent for having committed rape and kidnapping and designated him a juvenile sex offender. D.M. was committed to the Department of Youth Services for a minimum of twelve months *Page 2 
on each offense, to run concurrently, and up to the age of twenty-one.
 {¶ 2} D.M. raises three assignments of error on appeal.
 I. "THE STATE FAILED TO PROVIDE SUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT COMMITTED THE CHARGED OFFENSES AND THE COURT'S FINDING OF RESPONSIBILITY AMOUNTS TO A MANIFEST MISCARRIAGE OF JUSTICE."
 {¶ 3} D.M. contends that there was insufficient evidence to find him delinquent for committing rape and kidnapping and that this finding was against the manifest weight of the evidence.
 {¶ 4} An appellate court's function when reviewing the sufficiency of the evidence is to determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. When reviewing the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular *Page 3 
witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 5} The state presented the testimony of the victim, her mother, and the police officers who investigated the alleged offenses. The victim, R.G., was age 15 at the time of the hearing. R.G. testified that, on the afternoon of September 7, 2007, she had been on her family's porch with her sister; D.M. and his friend, Jamichael, had been on D.M.'s porch nearby. R.G. knew Jamichael through his sister and had previously spoken to D.M. According to R.G., Jamichael called her over to D.M.'s porch and then asked her to come inside the house. D.M. explained that his mother would be at work until later. When R.G. refused to go inside, Jamichael picked her up by the arms and took her inside, closing and locking the door behind them. D.M. was also inside.
 {¶ 6} According to R.G., while she was still in the living room of the house, she heard a knock on the front door. One of the boys claimed that it was "Mamma" and told R.G. to hide in the bathroom upstairs. A few minutes later, D.M. and Jamichael came into the bathroom. R.G. stated that D.M. unbuttoned her pants, she rebuttoned them, and then D.M. stuck his hand inside her pants and underwear, penetrating her with his finger. He also untied her shirt, which had been tied around her neck. She managed to get out of the bathroom, ran downstairs, and exited the house through the back door after trying unsuccessfully to open the locked front door. At that moment, R.G.'s mother, who had been alerted that R.G. was in D.M.'s house by R.G.'s sister, was coming down the street.
 {¶ 7} R.G.'s mother testified that, when she encountered her daughter, her *Page 4 
daugher's clothes were in disarray. The mother confronted D.M., who admitted that he had locked R.G. in the house but claimed that he had not been the one who touched her. A police officer who responded to the scene, Kyle Dickerson, also stated that D.M. had admitted being present but had denied wrongdoing. D.M. had blamed Jamichael.
 {¶ 8} Detective Teresa Lawson interviewed D.M. at the Safety Building. During that interview, D.M. admitted that he had held the door when Jamichael brought R.G. into the house, but he denied any other wrongdoing. He claimed that Jamichael had wanted to have sex with R.G. and that they had tricked her into thinking that "Mamma" was home so that she would run upstairs. D.M. claimed that he had later come in on R.G. and Jamichael in the bathroom and that R.G. had looked "frustrated."
 {¶ 9} D.M. testified in his own defense. He stated that R.G. had come into the house willingly while her sister waited outside. D.M. also claimed that R.G. had not been forced to do anything and that, after she initially came over to the house, she had gone home to change her clothes and then had returned. He stated that R.G. was smiling and Jamichael had his arm around her when they came into the house and that R.G. did not act like she wanted to leave. According to D.M., R.G. went upstairs with Jamichael willingly. When D.M went upstairs a few minutes later, he found R.G. and Jamichael in the bathroom. At that point, Jamichael told D.M. that R.G. liked him too and proposed a "train," or a sexual threesome. D.M. theorized that R.G. might be trying to get back at his brother by making her accusaton because she had been jilted by the brother.
 {¶ 10} Based on this evidence, the trial court concluded that D.M. had *Page 5 
committed rape and kidnapping. R.G.'s testimony provided a sufficient basis for a rational trier of fact to find the essential elements of the rape and kidnapping proven beyond a reasonable doubt. Moreover, the trial court reasonably found R.G.'s version of the events to be more credible than D.M.'s version. We cannot conclude that the trial court clearly lost its way and created a manifest miscarriage of justice.
 {¶ 11} The first assignment of error is overruled.
 {¶ 12} "DUE PROCESS IS VIOLATED BY DENYING A JUVENILE HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL WHEN LIFETIME REGISTRATION AS A SEXUAL OFFENDER IS A MANDATORY CONSEQUENCE OF THE CHARGED OFFENSE."
 {¶ 13} D.M. contends that he was entitled to a jury trial on his sexual offender designation because his case is "indistinguishable from an adult criminal conviction." He further asserts that the juvenile offender registration act is a criminal punishment and that its consequences are "too harsh a penalty to impose on someone who has been denied the fundamental right to a jury trial."
 {¶ 14} D.M.'s argument that adults are entitled to a jury trial in sexual offender designations whereas children are not is faulty. Several courts, including this one, have concluded that there is no right to a jury trial for sexual offender designations in cases involving adults. See In re Nooks, Montgomery App. No. 19374, 2002-Ohio-5824, ¶ 32;State v. Ogden (Sept. 25, 2000), Montgomery App. No. 18110; State v.Petersime (July 28, 2000), Trumbell App. No. 99-T-0159. We have noted that, for the same reasons, there would be no such right for a juvenile.Nooks at ¶ 32. See, also, State v. Ostrowski (1972), 30 Ohio St.2d 34,44, 282 N.E.2d 359. Moreover, the Supreme *Page 6 
Court of Ohio has held that sex offender registration requirements are remedial, non-punitive regulations aimed at protecting the public rather than punishing the offender. State v. Cook, 83 Ohio St.3d 404, 414-423,1998-Ohio-291, 700 N.E.2d 570; State v. Wilson, 113 Ohio St.3d, 2007-Ohio-2202,865 N.E.2d 1264. See, also, State v. King, Miami App. No. 08-CA-02, 2008-Ohio-2594. Because the registration is not a criminal sanction, there is no right to a jury trial.
 {¶ 15} The second assignment of error is overruled.
 {¶ 16} "THE JUVENILE COURT LACKS JURISDICTION TO IMPOSE MANDATORY SEXUAL OFFENDER REGISTRATION AFTER A JUVENILE REACHES THE AGE OF EIGHTEEN."
 {¶ 17} D.M. contends that the juvenile court exceeded its jurisdiction in imposing sex offender registration requirements that extend beyond his eighteenth birthday.
 {¶ 18} D.M. relies on R.C. 2152.02(C)(6), which states, in part: "The juvenile court has jurisdiction over a person who is adjudicated a delinquent child or juvenile traffic offender prior to attaining eighteen years of age until the person attains twenty-one years of age." However, his argument ignores R.C. 2152.83(A) and R.C. 2152.831(A), which clearly authorize the juvenile court to classify a child as a juvenile sex offender and to impose registration requirements upon such a juvenile offender. Moreover, R.C. 2152.82(C) provides that "the child's attainment of eighteen or twenty-one years of age does not affect or terminate [such a classification], and the order remains in effect * * *." Thus, D.M.'s argument that the court lacked jurisdiction to impose an offender classifcation that extended beyond his eighteenth birthday is without merit. *Page 7 
 {¶ 19} D.M.'s third assignment of error is overruled.
 {¶ 20} The judgment of the trial court will be affirmed.
BROGAN, J. and DONOVAN, J., concur.
Copies mailed to:
Jill R. Sink
Michael T. Columbus
 Hon. Anthony Capizzi *Page 1