THE STATE OF OHIO, APPELLANT, v. MALONE, APPELLEE.

[Cite as State v. Malone, 121 Ohio St.3d 244, 2009-Ohio-310.]

(No. 2007–2186—Submitted June 4, 2008—Decided February 3, 2009.)

———————

PFEIFER, J.

{¶ 1} In the early morning hours of April 9, 2006, appellee-defendant, Donald K. Malone III, made certain threats to Brittany Brown after she witnessed Malone's rape of L.K., an adult female. The only issue that we address today is whether R.C. 2921.04(B), a witness-intimidation statute, applies to threats made before any police investigation or legal proceeding has commenced in a case. We hold that R.C. 2921.04(B) does not apply in such situations.

## Factual and Procedural Background

{¶ 2} At the time of the rape, Malone was living with Brad and Brittany Brown in their apartment, as he did periodically. On April 8, 2006, Brittany ran into two acquaintances, L.K. and Hugh Pfarr, and invited them back to her and Brad's apartment. When they arrived, Brad and Malone were there. After some socializing, Pfarr left for home, and Brad left the apartment with him. Brittany invited L.K. to spend the night; L.K. accepted the offer, and she and Brittany eventually went into Brittany's bedroom.

{¶ 3} Malone called Brittany to his room. He told Brittany that he wanted to have sex with L.K. and instructed Brittany to tell L.K. that. He told Brittany that her life would be in danger if she did not tell L.K. that he wanted to have sex with her and that he would kill L.K. "if she didn't do everything that he told her to the way he told her to do it." Brittany went back to her bedroom and told L.K. what Malone had said. They both cried. Malone then came into the room with a knife and told L.K., "Give me what I want and then you can go." He told L.K. that he would kill her and chop up her body if she resisted. Malone asked Brittany to leave the room.

{¶ 4} Brittany went to the living room, but could still hear what was happening in her bedroom. She heard Malone say, "I don't want to kill you, but if I have to I will" and heard L.K. pleading to leave. After about ten minutes, she watched L.K. follow Malone into his bedroom; he had the knife in his hand. L.K. submitted to Malone's demands in order to save her life. Immediately after the rape, Malone told L.K. that if she told police about the rape, either he or his "dudes" would kill her mom and also kill her. Malone forced L.K. to shower. While she was in the bathroom, Brad came home. Malone told Brad, "I raped the bitch." When Malone and L.K. left the bathroom, they joined Brittany and Brad in their bedroom, where Brad was attempting to console Brittany. Malone asked Brittany, "I'm not gonna have any problems out of you, am I?" Malone told Brittany that if she was contacted by police or attorneys, she should tell them that she had been asleep and didn't know what had gone on. He added that her life would be in danger if she didn't follow his instructions.

{¶ 5} L.K. first reported the rape to police on April 10, 2006. Police arrested Malone later that day.

{¶ 6} A jury convicted Malone of two counts of rape, one count of tampering with evidence, one count of possessing criminal tools, and two counts of intimidation. The two counts of intimidation concerned the threats made to L.K. and Brittany; Malone was acquitted of a third count of intimidation for comments he made to Brad.

{¶ 7} Malone appealed his convictions to the Third District Court of Appeals, arguing that his convictions were against the manifest weight of the evidence. The appellate court affirmed all the convictions except for the count of intimidation of a witness that was based upon the threats Malone made to Brittany. *State v. Malone*, Marion App. No. 9–06–43, 2007-Ohio-5484, 2007 WL 2983155, ¶ 33. In regard to that offense, the court determined sua sponte as a matter of law that the evidence was insufficient to support the conviction because the intimidation took place before any police investigation or prosecution of a criminal case and that R.C. 2921.04(B) therefore did not apply. Id. at ¶ 34. The court noted that its decision was in conflict with *State v. Gooden*, Cuyahoga App. No. 82621, 2004-Ohio-2699, 2004 WL 1172074, and *State v. Hummell* (June 1, 1998), Morrow App. No. CA–851, 1998 WL 355511. Id. at ¶ 36.

{¶ 8} Upon the determination that a conflict exists, this court ordered briefing on the following question:

{¶ 9} "Is a conviction for intimidation of a witness under R.C. 2921.04(B), which requires the witness to be involved in a criminal action or proceeding, sustainable where the intimidation occurred after the criminal act but prior to any police investigation of the criminal act, and thus, also prior to any proceedings flowing from the criminal act in a court of justice?" *State v. Malone*, 116 Ohio St.3d 1472, 2008-Ohio-153, 879 N.E.2d 781.

## Law and Analysis

{¶ 10} Our response to the certified question is that a conviction for intimidation of a witness under R.C. 2921.04(B) is not sustainable when the intimidation occurred after the criminal act but prior to any proceedings flowing from the criminal act in a court of justice.

{¶ 11} Our analysis concerns R.C. 2921.04(B), which states:

{¶ 12} "No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."

{¶ 13} The other statute that guides our review is R.C. 2901.04(A), which states that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."

{¶ 14} Did Malone, "by unlawful threat of harm * * * attempt to influence, intimidate, or hinder * * * [a] witness involved in a criminal action or proceeding in the discharge of the duties of the * * * witness"? Whether Malone threatened Brittany is not in dispute, nor is the fact that she was a witness to the rape. The question is whether Brittany was "involved in a criminal action or proceeding" at the time the threat was made.

{¶ 15} R.C. 2921.04 does not define the term "criminal action or proceeding," but that phrase is used throughout the Ohio Revised Code and commonly indicates the involvement of a court. For instance, R.C. 1901.26(A)(4), which addresses costs in municipal court actions, establishes, "In any civil or *criminal action or proceeding,* witnesses' fees shall be fixed in accordance with sections 2335.06 and 2335.08 of the Revised Code." (Emphasis added.) R.C. 1907.31(A) provides, "The Rules of Civil Procedure, the Rules of Criminal Procedure, and the Rules of Evidence *apply in * * * criminal actions and proceedings before a county court* unless otherwise specifically provided in the Revised Code." (Emphasis added.) In *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 432, 639 N.E.2d 83, this court considered the meaning of the term "criminal action or proceeding" in the context of the public-records statute. R.C 149.43(A)(4) defines "trial preparation record" as a record "compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding." To determine the scope of the statute, this court sought to define the terms "action" and "proceeding":

{¶ 16} "For 'action' the definition 'includes all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its enforcement or denial by the court.' [Black's Law Dictionary (6th Ed.Rev.1990) 28]. 'Proceeding' is the '[r]egular and orderly progress in form of law, including all possible steps in an action from its commencement to the execution of judgment.' Id. at 1204." *Steckman,* 70 Ohio St.3d at 432, 639 N.E.2d 83.

{¶ 17} In *State ex rel. Unger v. Quinn* (1984), 9 Ohio St.3d 190, 9 OBR 504, 459 N.E.2d 866, this court included "criminal action" in defining "prosecution" as " '[a] criminal action; a proceeding instituted and carried on by due course of law, before a competent tribunal, for the purpose of determining the guilt or innocence of a person charged with crime.'" Id. at 191, 9 OBR 504, 459 N.E.2d 866, quoting Black's Law Dictionary (5th Ed.1979) 1099.

{¶ 18} As demonstrated in Ohio's statutory scheme and in this court's case law, a "criminal action or proceeding" implies a formal process involving a court. There is no indication in R.C. 2921.04(B) that "criminal action or proceeding" should be interpreted any way other than as it is commonly used in the Ohio Revised Code and as those words have been interpreted by this court.

{¶ 19} When Malone made his threats, no criminal complaint had been made against Malone in regard to the rape of L.K. No one had called police in regard to the incident. A key to our analysis is the clear-cut difference between the protections afforded victims and witnesses under the statute. As far as a *victim* is concerned, R.C. 2921.04(B) makes clear that it applies immediately upon the commission of the underlying crime, prior to the involvement of legal authorities; under R.C. 2921.04(B), it is illegal for anyone to "attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges." That portion of the statute protects victims from intimidation prior to their filing of a criminal complaint and during any subsequent prosecution.

{¶ 20} Protection of a witness in R.C. 2921.04(B), on the other hand, is separate and is not so temporally broad—the statute applies only if the witness is already "involved in a criminal action or proceeding." The General Assembly in R.C. 2921.04(B) could have protected witnesses from intimidation immediately upon their witnessing a criminal act, but it did not.

{¶ 21} The statute requires a witness's *involvement* in a criminal action or proceeding, not his or her potential involvement. The cases in conflict with the court's decision below held that a witness who has potential involvement in a criminal action is protected under the statute. In *Hummell*, Morrow App. No. CA–851, 1998 WL 355511, the court focused on the fact that the defendant had tried to prevent witnesses from testifying in a forthcoming action:

{¶ 22} "At the time appellant threatened Amy and Crystal, a criminal proceeding had not been instituted. However, the threat was clearly aimed at discouraging the girls from having any involvement in a forthcoming criminal action. Appellant told the girls that if they told anyone about the rape, he would kill them. Appellant was attempting to prevent the girls from discharging their duties as a witness to a criminal act. The evidence was legally sufficient to permit the charges to go to the jury." Id. at *3.

{¶ 23} Likewise, in *Gooden*, 2004-Ohio-2699, 2004 WL 1172074, ¶ 37, the court held that interference with a witness's potential participation in a criminal action violated the statute:

{¶ 24} "It has previously been recognized that it is not necessary for a criminal proceeding to be pending in order to sustain a conviction for intimidation under R.C. 2921.04. *State v. Hummell* (Jun. 1, 1998), Morrow App. No. CA–851 [1998 WL 355511]. It is sufficient that the threat be clearly aimed at discouraging a witness from having any involvement in a forthcoming criminal action. Id."

{¶ 25} Neither *Hummell* nor *Gooden*, however, is grounded in R.C. 2921.04(B). The statute simply does not apply to witnesses or attorneys who *might* become involved in a criminal action or proceeding. It applies only to witnesses and attorneys who *are involved* in a criminal action or proceeding.

{¶ 26} Further, the coupling of witnesses with attorneys in the statute indicates that the statute does not apply until there is some process initiated that requires their participation.

{¶ 27} Finally, we acknowledge that the intimidation of witnesses, whether immediately after the commission of a criminal act or after charges have been filed, should not be countenanced and does real harm to the administration of justice. Ohio's statutory scheme does protect a witness in a potential criminal action from the threats of a perpetrator; it simply does not do so through R.C. 2921.04. The intimidation that occurred in this case could fall under Ohio's aggravated-menacing statute, R.C. 2903.21, which states:

{¶ 28} "(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family.

{¶ 29} "(B) Whoever violates this section is guilty of aggravated menacing. Except as otherwise provided in this division, aggravated menacing is a misdemeanor of the first degree."

{¶ 30} Malone, however, was charged under R.C. 2921.04. Liberally construing that statute in favor of the accused, as we must, we hold that when no crime has been reported and no investigation or prosecution has been initiated, a witness is not "involved in a criminal action or proceeding" for purposes of R.C. 2921.04(B). We therefore answer the certified question in the negative.

{¶ 31} Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

O'DONNELL, J., dissents.

_____

Jim Slagle, Marion County Prosecuting Attorney, for appellant.

Collins & Lowther, L.P.A., and Kevin P. Collins, for appellee.