IN RE M.W.

[Cite as *In re M.W.,* 133 Ohio St.3d 309, 2012-Ohio-4538.]

*Juvenile procedure—R.C. 2151.352—The term "proceedings" as used in R.C. 2151.352 means court proceedings, and in that context, a child is statutorily entitled to representation by legal counsel upon the filing of a complaint in juvenile court or upon initial appearance in the juvenile court.*

(No. 2011-0215—Submitted December 6, 2011—Decided October 3, 2012.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 94737, 2010-Ohio-6362.

_____

SYLLABUS OF THE COURT

The term "proceedings" as used in R.C. 2151.352 means court proceedings, and in that context, a child is statutorily entitled to representation by legal counsel upon the filing of a complaint in juvenile court or upon initial appearance in the juvenile court.

_____

O'DONNELL, J.

{¶ 1} The issue we confront in this appeal is whether a juvenile has a statutory right to counsel during a police interrogation conducted before a complaint is filed or an appearance is made in juvenile court.

{¶ 2} R.C. 2151.352 provides that a child "is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152." Because the term "proceedings," as used in this statute, means court proceedings, a juvenile does not have a statutory right to counsel at an interrogation conducted

prior to the filing of a complaint or prior to appearing in juvenile court. Accordingly, we affirm the judgment of the court of appeals.

**Facts and Procedural History**

{¶ 3} On August 22, 2009, Cleveland Police Sergeant Thomas Shoulders stopped a vehicle driven by M.W. (who at that time identified himself as M.J.) and determined he had no valid Ohio driver's license. When Shoulders asked why he lied about his name, M.W. stated he "thought [he] could get away with it" and he thought he had been stopped for "something to do with [A.C.]" Shoulders knew that A.C. had been arrested for aggravated robbery the previous day and therefore asked M.W. what he knew about that robbery. M.W. told Shoulders that he heard A.C. robbed "someone at gun point on Thursday night" and then added that he had served as the lookout for A.C.: "I kept anyone from walking up on him or watched for the police." M.W. further explained that after the robbery, they each ran, intending to split the money the following day, but the police arrested A.C. before they had that opportunity.

{¶ 4} Based on those statements, Shoulders arrested M.W., transported him to the Cleveland Second District Police Station, and in the presence of Detective David Borden, advised M.W. of his constitutional rights. M.W. signed a written waiver of his rights and a written statement.[1] Detective Borden then filed a complaint in the Cuyahoga County Juvenile Court alleging M.W. to be delinquent for having committed aggravated robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree, with firearm specifications pursuant to R.C. 2941.141 and 2941.145.

{¶ 5} The state moved to bind M.W. over to the general division of common pleas court in order to prosecute M.W. as an adult. The juvenile court

---

1. It is this statement that M.W. contests in this appeal; no objection is made to the statements he gave to Shoulders at the time he was stopped.

denied that motion, finding M.W. amenable to care and rehabilitation in the juvenile system.

{¶ 6} Subsequently, a juvenile court magistrate adjudicated M.W. delinquent of aggravated robbery with a three-year firearm specification, and the juvenile court adopted that decision: it placed M.W. in the custody of the Ohio Department of Youth Services for a minimum of one year on the aggravated-robbery charge and one year on the three-year firearm specification, to be served consecutively, for a period of commitment not to exceed 21 years of age.

{¶ 7} M.W. appealed and raised several claims, urging that the trial court erred in admitting his written statement into evidence because Shoulders had violated R.C. 2151.352 in obtaining it. That statute provides a juvenile with a right to representation by legal counsel at all stages of the proceedings pursuant to R.C. Chapters 2151 and 2152. M.W. asserted that giving a written statement to Shoulders was a proceeding and triggered his statutory right to counsel. He further claimed that based on *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, he could not waive his Fifth Amendment right to counsel during interrogation, recognized in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), unless he had consulted with a parent, guardian, custodian, or attorney regarding the waiver. Because he had not consulted anyone, M.W. argued that the waiver of his *Miranda* right to counsel was invalid based on *In re C.S.*

{¶ 8} The state disputed the assertion that interrogation constituted a proceeding within the scope of R.C. Chapter 2151 at which the right to counsel pursuant to R.C. 2151.352 attached, arguing that the term "proceedings" in R.C. 2151.352 meant court proceedings. It cited the definitions for the terms "court proceeding" and "party" contained in Juv.R. 2 and the requirement of Juv.R. 4 that parties to a juvenile court proceeding are entitled to counsel. The state further explained that a juvenile-delinquency proceeding commences when a

complaint is filed or a juvenile appears before the juvenile court. In this case, the state argued that because M.W. gave his written statement before Detective Borden filed the complaint in juvenile court that commenced the delinquency proceeding against him, his statutory right to counsel had not attached at the time of interrogation.

{¶ 9} The appellate court rejected M.W.'s claim that giving a written statement to Shoulders constituted a stage of the proceedings, explaining that "a juvenile proceeding does not commence until the filing of a complaint." 8th Dist. No. 94737, 2010-Ohio-6362, ¶ 16. It concluded that because no complaint had been filed against M.W. at the time of the police interrogation, R.C. 2151.352 did not apply. *Id.*[2]

{¶ 10} M.W. appealed and now presents this proposition of law for our consideration:

> A child has the right to counsel at all stages of the proceedings against him. Because Ohio's General Assembly has designated interrogation as a stage of the proceedings, a child must be represented by his parent, guardian, custodian, or an attorney before the child can waive his right to counsel pursuant to *Miranda*.

{¶ 11} M.W. contends that an interrogation is an R.C. Chapter 2151 proceeding because it is included in R.C. 2151.311(D)(2) and that he had a statutory right to counsel at all stages of the proceedings pursuant to R.C. 2151.352 that arose before he waived his *Miranda* right to counsel. He further

---

2. M.W. never exercised his *Miranda* right to counsel, as noted by the court of appeals in its opinion. Thus, the only basis upon which M.W. claims a right to counsel in this appeal is a statutory right to counsel pursuant to R.C. 2151.352.

asserts that the waiver of his *Miranda* right to counsel is invalid based on *In re C.S.* because he had not consulted with an attorney or parent.

{¶ 12} The state contends that an interrogation is not a "proceeding" as that term is used in R.C. 2151.352 or within the usual and ordinary definition of the term. It also contends that the legislative history of R.C. 2151.352 does not support a finding that an interrogation is a proceeding and that the term "proceeding" is used consistently throughout the Revised Code to mean a court proceeding. The state also asserts that the juvenile rules of procedure similarly do not lend support to M.W.'s position, pointing out that Juv.R. 2(G) defines "court proceeding" to mean any action taken by a court after the filing of a complaint or the time the child first appears before the court and that Juv.R. 4(A) states that the right to counsel does not attach until the juvenile becomes "a party to a juvenile court proceeding." Thus, the state contends that because interrogation is not an R.C. Chapter 2151 proceeding, the right of a juvenile to counsel pursuant to R.C. 2151.352 does not arise until the juvenile appears before the court, and, in turn, *In re C.S.* does not apply in this case.

{¶ 13} Thus, the issue presented by this appeal is whether the statutory right to counsel delineated by the General Assembly in R.C. 2151.352 attaches to an interrogation of a juvenile prior to the filing of a complaint alleging delinquency or prior to an appearance by the juvenile in juvenile court. Resolution of that issue rests on the definition of the term "proceedings" as used in R.C. 2151.352.

## Law and Analysis

{¶ 14} R.C. 2151.352 provides: "A child, the child's parents or custodian, or any other person in loco parentis of the child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152 of the Revised Code."

**{¶ 15}** R.C. 2151.311(C)(1) provides that a person taking a child into custody for a delinquent act that would be a felony if committed by an adult may hold the child *for processing purposes* for a maximum of six hours in an adult center. The statute further defines "processing purposes" to include "*[i]nterrogating the child*, contacting the child's parent or guardian, arranging for placement of the child, or arranging for transfer or transferring the child, while holding the child in a nonsecure area of the facility." (Emphasis added.) R.C. 2151.311(D)(2).

**{¶ 16}** In the case of *In re C.S.*, we construed R.C. 2151.352 in the context of a delinquency proceeding and held that "a juvenile may waive his constitutional right to counsel, subject to certain standards * * *, if he is counseled and advised by his parent, custodian, or guardian. If the juvenile is not counseled by his parent, guardian, or custodian and has not consulted with an attorney, he may not waive his right to counsel." 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 98. Here, however, we are concerned with determining whether an interrogation that occurs *prior to* the filing of a complaint in the juvenile court is considered a "proceeding" for the purposes of R.C. 2151.352, and it is the procedural and timing differences that distinguish this case from *In re C.S.*

**{¶ 17}** This appeal involves a matter of statutory construction. The primary goal in construing a statute is to ascertain and give effect to the intent of the legislature. *State v. Hairston,* 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 11. When analyzing a statute, we first examine its plain language and apply the statute as written when the meaning is clear and unambiguous. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9. This analysis also requires that we read words and phrases in context and construe them according to the rules of grammar and common usage. R.C. 1.42.

**{¶ 18}** R.C. 2151.352 does not define the term "proceedings"; therefore, we look to the usual and ordinary definition of that term for guidance. *Brecksville*

*v. Cook*, 75 Ohio St.3d 53, 56, 661 N.E.2d 706 (1996). *Black's Law Dictionary* 1324 (9th Ed.2009) defines "proceeding" as (1) "[t]he regular and orderly progression of a lawsuit, *including all acts and events between the time of commencement and the entry of judgment*" (emphasis added), (2) a way by which redress is sought from a tribunal or an agency, (3) "[a]n act or step that is part of a larger action," and (4) "[t]he business conducted by a court or other official body; a hearing." It is also noteworthy that in 1969, when the General Assembly enacted R.C. 2151.352, "proceeding" was defined in *Black's Law Dictionary* in virtually the same way, but the entry included a comment that the term proceeding "is properly applicable, in a legal sense, only to judicial acts before some judicial tribunal." *Id.* at 1368 (4th Ed.1968). Also, *Webster's Third New International Dictionary* 1807 (1986) defines "proceedings" as "the course of *procedure in a judicial action or in a suit in litigation: legal action * * *: a particular action at law or case in litigation." (Emphasis added.) Thus, the term "proceedings" denotes acts or events taken between the time of commencing an action at law and the entry of a final judgment by a judicial tribunal. "Proceedings" evokes a court of law, not the investigatory action taken by police prior to the filing of a complaint or a juvenile's initial appearance before a tribunal.

{¶ 19} Prior decisions from this court also support interpretation of the term "proceedings" to mean court proceedings. In *State v. Davis,* 132 Ohio St.3d 25*,* 2012-Ohio-1654, 968 N.E.2d 466, we construed R.C. 2921.04(B) and held that a conviction for witness intimidation could not be sustained when the act of intimidation occurred prior to the formal initiation of criminal charges or grand jury proceedings, but during a pending police investigation, because a court was not yet involved. We reiterated: "Throughout the Revised Code, ' "criminal action or *proceeding*" * * * *indicates the involvement of a court.' "* (Emphasis added.) *Id*. at ¶ 16, quoting *State v. Malone*, 121 Ohio St.3d 244, 2009-Ohio-310, 903 N.E.2d 614, at ¶ 15; *see also Malone* at ¶ 18 ("As demonstrated in Ohio's

statutory scheme and in this court's case law, a 'criminal action or proceeding' implies a formal process involving a court"); *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 432, 639 N.E.2d 83 (1994) (noting that the term "proceeding," used in R.C. 149.43(A)(1), is defined in *Black's* to mean the steps in an action from commencement to final judgment).

{¶ 20} In addition, the Juvenile Rules lend support to the view that the term "proceedings" in R.C. 2151.352 means court proceedings. *See, e.g.*, Juv.R. 2(G) defines "court proceeding" to mean "all action taken by a court from the earlier of (1) the time a complaint is filed and (2) the time a person first appears before an officer of a juvenile court until the court relinquishes jurisdiction over such child"; Juv.R. 2(Y) defines a "party" as "a child who is the subject of a juvenile court proceeding"; and Juv.R. 4(A) provides that "[e]very party shall have the right to be represented by counsel" and that right attaches "when a person becomes a party to a juvenile court proceeding."

{¶ 21} Finally, the context in which the term "proceedings" is used in R.C. 2151.352 reveals that the General Assembly contemplated that the term would mean court proceedings. The statute applies to a "child, the child's parents or custodian, or any other person in loco parentis of the child" and refers to each as a "party," inferring that a legal action has commenced. The statute also directs the court to undertake a variety of actions, including providing counsel to indigent parties, observing whether a party is aware of the right to counsel and the right to be appointed counsel if indigent, and continuing a case to enable a party to obtain counsel or be appointed counsel; a court, however, may take action only after its jurisdiction has been invoked. *See State ex rel. Pfeiffer v. Lorain Cty. Common Pleas Court*, 13 Ohio St.2d 133, 136-137, 235 N.E.2d 232 (1968); *see also In re Hunt*, 46 Ohio St.2d 378, 348 N.E.2d 727 (1976), paragraph one of the syllabus ("A complaint under Juv.R. 10 and R.C. 2151.27 alleging that a child is

dependent must state the essential facts which bring the proceeding within the jurisdiction of the court").

{¶ 22} The fallacy of M.W.'s argument is highlighted by the fact that he invokes a right to counsel pursuant to R.C. 2151.352 before the delinquency matter is brought against him in juvenile court. His reliance on R.C. 2151.352, which requires a court to appoint counsel or ascertain whether a party is aware of his right to counsel, is weakened by the fact that the jurisdiction of the juvenile court had not yet been invoked, and thus no court had authority to act.

{¶ 23} In view of these reasons and the plain language of R.C. 2151.352, we conclude that an interrogation that occurs prior to the filing of a complaint alleging delinquency or prior to an appearance in juvenile court is not a proceeding that falls within the scope of R.C. Chapter 2151. This determination is consistent with our duty to construe statutes to avoid unjust and unreasonable results. R.C. 1.47(C).

{¶ 24} This conclusion also conforms with our statement in *State v. Ostrowski*, 30 Ohio St.2d 34, 282 N.E.2d 359 (1972): "Taken as a whole, the purpose of R.C. 2151.352 is to insure to the juvenile his right to counsel and/or his right to have parents present at any hearing." *Id*. at 42 (construing an earlier version of R.C. 2151.352, which contained the term "stages of the proceedings").

{¶ 25} In this case, the complaint filed by Detective Borden commenced the delinquency proceeding against M.W. and invoked the jurisdiction of the juvenile court and afforded M.W. the right to counsel pursuant to R.C. 2151.352. Because Shoulders's interrogation of M.W. occurred prior to the filing of that complaint, M.W.'s statutory right to counsel had not attached.

{¶ 26} We stress that the only claimed right to counsel in this appeal is a statutory one premised on R.C. 2151.352, and our narrow holding does not address any constitutional right to counsel or the issue of waiver. Although M.W. had a Fifth Amendment right to counsel pursuant to *Miranda*, he did not exercise

that right. *In re M.W.*, 2010-Ohio-6362, at ¶ 16. His Sixth Amendment right to counsel, which guarantees the right to counsel at all " 'critical' stages of the proceedings," *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), had not yet attached because a complaint alleging delinquency had not yet been filed. *United States v. Gouveia*, 467 U.S. 180, 189, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (right to counsel "attaches at the initiation" of adversarial judicial proceedings).

### Conclusion

{¶ 27} The term "proceedings" as used in R.C. 2151.352 means court proceedings, and in that context, a child is statutorily entitled to representation by legal counsel upon the filing of a complaint in juvenile court or upon initial appearance in the juvenile court. Thus, the right of a juvenile to counsel pursuant to R.C. 2151.352 attaches when the jurisdiction of a juvenile court is properly invoked. For these reasons, we affirm the judgment of the appellate court.

Judgment affirmed.

LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

O'CONNOR, C.J., and PFEIFER and MCGEE BROWN, JJ., dissent.

_____

**LANZINGER, J., concurring.**

{¶ 28} I concur in judgment because the statute, the juvenile rules, and the cases cited in the majority opinion support the conclusion that the term "proceedings" in R.C. 2151.352 relates to juvenile court proceedings that begin when a complaint alleging delinquency is filed. Although the dissent is impassioned in arguing that a juvenile's right to counsel should attach at an earlier time, such an extension is a policy matter. Just as it amended R.C. 2921.04 to define "witness" to mean a person with knowledge of facts "whether or not criminal or delinquent child charges are actually filed," the General Assembly

may define the term "proceedings" to include a statutory right to counsel for juveniles during "investigations of delinquency" if it so chooses.

CUPP, J., concurs in the foregoing opinion.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 29} Because I believe that the majority's holding offends the United States Supreme Court's constitutional commands on a juvenile's due process and Fifth Amendment rights, our own precedent, and the intent of the General Assembly in enacting R.C. 2151.352, I must dissent.

## THE CONFESSION

{¶ 30} In 2009, M.W., a 15-year-old boy, acted as a lookout while his friend, another juvenile male, robbed a victim at gunpoint. We believe this to be true because soon thereafter, M.W. admitted those facts to Cleveland Police.

{¶ 31} M.W. confessed after signing a waiver of his rights to an attorney, without the benefit of advice from counsel or his parents or guardian. (Evidently, it is "typical" for the Cleveland Police Department to interview juveniles without their parents being present.) And after doing so, he was interrogated by police without an attorney being present.

{¶ 32} There is no doubt that M.W.'s actions were dangerous and that he is in need of intervention. But there is doubt whether his confession, which was used against him in the subsequent delinquency proceedings, was constitutionally obtained.

{¶ 33} The majority opinion divorces the relevant analyses from the question before us, asserting that there is no need to discuss a juvenile's constitutional protections because M.W. waived any constitutional right against self-incrimination. Evidently, the majority ignores that the proposition we

11

accepted for review in this appeal clearly refers to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[3]

**{¶ 34}** The majority then asserts that the statute at issue, R.C. 2151.352, is a plainly worded one and that the statutory term "proceedings" cannot be subject to more than one interpretation.

**{¶ 35}** The majority is mistaken on both counts.

### CONTEXT IS EVERYTHING

*The Statutory Term "Proceedings" Is Not Clear and Unambiguous*

**{¶ 36}** The term "proceedings" does not have one plain and ordinary meaning.

**{¶ 37}** The term can certainly refer to an event in civil litigation or criminal prosecution that occurs after the filing of a complaint or an indictment with the court. But that understanding of the word is not the exclusive one, nor is it dispositive here. After all, the majority concedes that the word "proceedings" also refers to " '[a]n act or step that is part of a larger action.' " Majority opinion at ¶ 18, quoting *Black's Law Dictionary* 1324 (9th Ed.2009). And certainly an interrogation of a juvenile is an act or step that is part of a larger action, i.e., the process of adjudicating the juvenile as a delinquent.

**{¶ 38}** Perhaps more compelling, however, is that *Black's* recognizes that the term "proceedings" includes " 'all ancillary or provisional steps, such as *arrest.*' " (Emphasis added.) *Black's* at 1324, quoting Edwin E. Bryant, *The Law of Pleading under the Codes of Civil Procedure* 3-4 (2d Ed.1899).[4] Notably, that

---

3. The question before us is whether a juvenile has the right to counsel at all stages of the proceedings against him, and whether in the interrogation stage, the juvenile must be represented by his parent, guardian, custodian, or an attorney before waiving his right to counsel pursuant to *Miranda*.

4. The majority attempts to support its view by pointing to the definitions that were in *Black's* when the statute was enacted in 1969. But 70 years prior to the enactment of the statute, Dean Bryant had explained that an "arrest" is a "proceeding." We must presume that the General Assembly was aware of that usage of the term "proceeding" in the common law. *In re C.S.*, 115

definition is absent from the majority's opinion, notwithstanding the fact that it appears in the same definition upon which the majority relies.

{¶ 39} Thus, the varied definitions of "proceedings" contradict the majority's insistence that there is only one plain and ordinary meaning of the word and its conclusion that the only meaning of "proceedings" is a court event that takes place after the filing of a complaint or indictment. Thus, to understand what the General Assembly intended, we must look beyond the statute's words.

{¶ 40} The majority implicitly agrees that we must look beyond the words of the statute because its analysis does not end with a discussion of the plain and ordinary meaning of "proceeding." Instead, it attempts to buttress its conclusion with context from our case law. I agree that context controls the analysis here, but I strongly disagree with the context upon which the majority relies.

### THE IMPROPER CONTEXT USED BY THE MAJORITY

#### *The Sixth Amendment Right to Counsel Is Inapplicable in Juvenile Cases*

{¶ 41} The majority holds, " 'Proceedings' evokes a court of law, not the investigatory action taken by police prior to the filing of the complaint or a juvenile's appearance before a tribunal." Majority opinion at ¶ 18. The majority would be correct if it were addressing an adult criminal defendant's Sixth Amendment right to counsel in a proceeding, which does not attach until a prosecution commences. *See, e.g., McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). More specifically, in the adult criminal context, the United States Supreme Court has held that a defendant's right to counsel in a proceeding does not commence until the government initiates " 'adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 198, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008),

Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 91 (when enacting statutes, we presume the General Assembly was mindful of the common law).

quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion).

{¶ 42} But the Sixth Amendment is not applicable here.

### *The Due Process Clause of the Fourteenth Amendment*
### *Controls in Juvenile Cases*

{¶ 43} As we explained in *In re C.S.*, the juvenile's right to counsel is not governed by the Sixth Amendment, but rather by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 79, citing *In re Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Because it is founded in due process, the juvenile's right to counsel in proceedings is a malleable right rather than a rigid one; it is driven by concerns for fundamental fairness. *Id.* at ¶ 80. It was that sense of fundamental fairness that drove the analysis in *In re C.S.,* a critical point that was evidently lost on the majority.

### *The Majority's Reliance on Inapposite Precedent*

{¶ 44} The majority also relies on Ohio case law decided long after the General Assembly enacted R.C. 2151.352. I do not quibble with the import of those cases in other contexts, but they are inapposite here.

{¶ 45} For example, the majority's reliance on cases like *State v. Davis,* 132 Ohio St.3d 25*,* 2012-Ohio-1654, 968 N.E.2d 466, is entirely misplaced.

{¶ 46} In *Davis*, we rendered a narrow holding interpreting R.C. 2921.04, a modern statute prohibiting intimidation of witnesses. We held, "A police investigation of a crime, without more, is not a proceeding in a court of justice, and it does not invoke the protection of R.C. 2921.04(B) for a person who observes the crime." *Id*. at ¶ 19.

{¶ 47} *Davis* was decided more than 40 years after the General Assembly enacted R.C. 2151.352, and the decision does not interpret R.C. 2151.352 or any

other juvenile statute. It does not offer even the smallest glimpse of insight into the legislative thinking on juvenile rights in 1969.[5]

**{¶ 48}** And notably, while the appeal in *Davis* was pending, the General Assembly sent a clear message rejecting the courts' narrow interpretation of R.C. 2921.04, which included the phrase "criminal action or proceeding" when Davis was prosecuted. While the appeal was pending, the General Assembly amended R.C. 2921.04, clarifying that the statutory scheme is designed to protect "any person who has or claims to have knowledge concerning a fact or facts concerning a criminal or delinquent act, whether or not criminal or delinquent child charges are actually filed." *Davis*, 132 Ohio St.3d 25, 2012-Ohio-1654, 968 N.E.2d 466, ¶ 3, fn. 1, citing 2011 Sub.H.B. No. 20, effective June 4, 2012. If anything, the General Assembly's response to *Davis* militates in favor of holding that the right to counsel precedes the filing of formal charges.

**{¶ 49}** Further, our holding in *Davis* was driven in part by the rule that we must construe ambiguity in criminal statutes in favor of the defendant and against the state. That rule does not support the majority's holding in construing R.C. 2151.352. Rather, it supports the notion that we must generously read R.C.

---

5. *Rice v. United States*, 356 F.2d 709, 710-712 (8th Cir.1966), a case in which union laborers were intimidated into withdrawing grievances they had filed with the National Labor Relations Board, is a far better explanation of how legislative bodies viewed "proceedings" in the context of witness-intimidation statutes at the time. There, the federal appeals court expansively interpreted the term "proceeding" to reach the filing of a preliminary charge filed with an administrative agency even though the agency had never filed a formal complaint. *Rice* at 712. The court broadly interpreted the term "proceeding" as "a comprehensive term meaning the action of proceeding—a particular step or series of steps, adopted for accomplishing something," thus including all steps from the inception of an action to its conclusion. *Id.* In doing so, it noted the importance of understanding the legislative intent behind the word. The court explained that the purpose of the statute at issue in *Rice* was to punish obstruction of the administrative process by impeding a witness in any proceeding before a governmental agency. The court stressed that the statute reached intimidation "*at any stage of the proceedings, be it adjudicative or investigative. Congress did not limit the term 'proceeding' as used in [the witness-intimidation statute] to only those acts committed after a formal stage was reached, and we cannot so limit the term.*" (Emphasis added.) *Id.*

2151.352 in favor of the juvenile's rights, including his right to counsel and due process. The majority does the opposite; it reads the statute in favor of the state.

{¶ 50} The majority opinion also relies on *State v. Ostrowski*, 30 Ohio St.2d 34, 282 N.E.2d 359 (1972), for the proposition that we interpreted an earlier version of R.C. 2151.352 to ensure that juveniles have counsel or their parents present at any hearing. That statement is wholly misleading.

{¶ 51} The full context of the quote used by the majority establishes that in *Ostrowski*, we were concerned with the sequestration of witnesses, including a juvenile's parents, and not the right to have those parents, or counsel, present during the proceedings:

> Taken as a whole, the purpose of R.C. 2151.352 is to insure to the juvenile his right to counsel and/or his right to have his parents present at any hearing. In our opinion, such a provision is not intended to and does not take away from a trial court its basic right to order a separation of *witnesses* until such time as such witnesses have testified. During such time the exclusion is not of parents, as such, but instead is the exclusion of witnesses.
>
> Moreover, during such time as the parents were so excluded, the juvenile was fully and adequately represented by two attorneys. Under these circumstances, no possible prejudice to the juvenile could result from such exclusion.

(Emphasis sic.) *Id.* at 43.

{¶ 52} Even if *Ostrowski* had not been focused on the issue of sequestration, let us be clear that *Ostrowski* addressed proceedings in court—not custodial interrogations—in which the juvenile at issue had the benefit of two

attorneys. Thus, in this case, in which a juvenile had no counsel during a custodial interrogation, *Ostrowski* is of no value.

{¶ 53} It is a difficult task to attempt to define "proceedings" by looking to cases that analyzed the term in the era in which R.C. 2151.352 was enacted. This is particularly true given that while the General Assembly was crafting R.C. 2151.352, the federal courts were struggling to define and interpret "proceedings" in quasi-judicial proceedings like administrative proceedings.

{¶ 54} In a host of cases, the federal courts interpreted "proceedings" to reach investigations conducted by administrative agencies long before any formal complaint or indictment was filed in court. For example, in 1964, the District of Columbia District Court considered a Securities and Exchange Commission investigation to be a "proceeding." *United States v. Batten*, 226 F.Supp. 492, 494 (D.D.C.1964). And soon thereafter, the Sixth Circuit Court of Appeals upheld a conviction for giving false invoices to an investigator in a Federal Trade Commission case, holding that the term "proceeding" has a broad scope, "encompassing both the investigative and adjudicative functions of a department or agency." *United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir.1970).

{¶ 55} Admittedly, the statutory schemes at issue in *Batten* and *Fruchtman* are not any more akin to R.C. 2151.352 than the cases cited by the majority. But they illustrate that at the time the General Assembly used the word "proceedings" in R.C. 2151.352, the courts were not limiting its definition to the events that occur after the formal filing of charges in a court. Indeed, neither lawmakers nor judges of that era myopically viewed the term "proceedings" in the manner the majority suggests here. As the Tenth Circuit Court of Appeals succinctly stated after reviewing cases like *Rice* and *Batten*:

In sum, the term "proceeding" is not, as one might believe, limited to something in the nature of a trial. The growth and

expansion of agency activities have resulted in a meaning being given to "proceeding" which is more inclusive and which no longer limits itself to formal activities in a court of law. Rather, the investigation or search for the true facts such as that which is described in the indictment here is not to be ruled a non-proceeding simply because it is preliminary to indictment and trial.

*United States v. Browning*, 572 F.2d 720, 724 (10th Cir.1978).

{¶ 56} Having illustrated the reasons why the majority's contextualization is improper, I turn to one that accurately illuminates the statute.

### THE PROPER CONTEXT

### *R.C. 2151.352 Codifies and Expands a Juvenile's Constitutional Rights*

{¶ 57} This court recognizes that R.C. 2151.352 is the legislative embodiment of the United States Supreme Court's holding in *Gault*. *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 83. "Indeed, through R.C. 2151.352, the legislature provided a statutory right to appointed counsel that goes beyond constitutional requirements." *Id.*, citing *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, ¶ 15, and *State ex rel. Asberry v. Payne*, 82 Ohio St.3d 44, 46, 693 N.E.2d 794 (1998).

{¶ 58} We must look to the constitutional requirements that the statute embodies. And after doing so, we must be true to them and to the statutory right that exceeds those requirements.

### *Relevant Supreme Court Precedent*

{¶ 59} The General Assembly enacted our juvenile-delinquency statutes in the wake of the Supreme Court's decisions in watershed cases like *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and *Gault*. *See In re C.S.* Those decisions, and their rationales, control here. So, too, do the court's contemporaneous pronouncements on the Fifth Amendment right against self-

incrimination in *Miranda*, which was announced shortly before Ohio's enactment of R.C. 2151.352.

{¶ 60} The Fifth Amendment protects an individual from being compelled to be a witness against himself, whether in a custodial interrogation or in court after formal charges have been brought. *See Bram v. United States*, 168 U.S. 532, 542-543, 18 S.Ct. 183, 42 L.Ed. 568 (1897). In *Miranda*, the Supreme Court explained those rights, holding that a police officer, before questioning a suspect in custody, must warn the suspect of the right to remain silent and that anything said during interrogation could be used against the suspect in court, that the suspect has a right to have an attorney present during questioning, and that if the suspect cannot afford an attorney but desires one, the court will appoint one prior to any questioning. *Miranda*, 384 U.S. at 478-479, 86 S.Ct. 1602, 16 L.Ed.2d 694.

{¶ 61} The *Miranda* warning is more than fodder for television and movie depictions of police work. Its purpose is "to dispel the compulsion inherent in custodial surroundings." *Id.* at 458. Indeed, the warning concerning a suspect's right to counsel is designed to ensure that the privilege against self-incrimination "remains unfettered throughout the interrogation process." *Id.* at 469. That protection is critical for all individuals, but particularly for juveniles.

{¶ 62} As the Supreme Court recently reiterated, by their very nature, custodial police interrogations entail inherently compelling pressures. *J.D.B. v. North Carolina*, ___ U.S. ___, 131 S.Ct. 2394, 2401, 180 L.Ed.2d 310 (2011), citing *Miranda* at 467. Those pressures are heightened for juveniles:

> Even for an adult, the physical and psychological isolation of custodial interrogation can "undermine the individual's will to resist and * * * compel him to speak where he would not otherwise do so freely." [*Miranda* at 467.] Indeed, the pressure of custodial interrogation is so immense that it "can induce a frighteningly high

percentage of people to confess to crimes they never committed." *Corley v. United States,* 556 U.S. 303 [321], 129 S.Ct. 1558, 1570, 173 L.Ed.2d 443 (2009) (citing Drizin & Leo, The Problem of False Confessions in the Post-DNA World, 82 N.C.L.Rev. 891, 906-907 (2004)); see also *Miranda,* 384 U.S., at 455, n. 23, 86 S.Ct. 1602 [16 L.Ed.2d 694]. That risk is all the more troubling— and recent studies suggest, all the more acute—when the subject of custodial interrogation is a juvenile.

*Id.,* ___ U.S. ___, 131 S.Ct. at 2401, 180 L.Ed.2d 310.

{¶ 63} Given the importance of the Fifth Amendment's protections against self-incrimination, it is not surprising that the year after the Supreme Court issued *Miranda*, the court announced its decision in *Gault*, which held that the concept of Fifth Amendment rights set forth in *Miranda* applied to juveniles. *Gault*, 387 U.S. at 55, 87 S.Ct. 1428, 18 L.Ed.2d 527. In doing so, the court made clear that the juvenile's right to counsel extended to the juvenile's interactions with police as well as in any courtroom hearings that might follow the interaction with police:

*The participation of counsel will, of course, assist the police,* Juvenile Courts and appellate tribunals in administering the privilege. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair.

(Emphasis added.) *Id.*

**{¶ 64}** The rationale for the Supreme Court's holdings was not shrouded in mystery. Rather, the court had previously discussed the need for a juvenile to have parents or counsel present during interrogations. "[A juvenile] cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions." *Gallegos v. Colorado*, 370 U.S. 49, 54, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962). A juvenile in police custody is often in need of "more mature judgment" from an adult relative or counsel, who can give the juvenile "the protection which his own immaturity could not." *Id.*

**{¶ 65}** That understanding of the limitations on a juvenile's cognitive abilities and legal capacity was not new to the court or created by it. Indeed, as recognized by Blackstone, the common law is replete with examples of how juveniles are treated differently in the law. *J.D.B.,* ___ U.S. ___, 131 S.Ct. at 2403-2404, 180 L.Ed.2d 310, citing 1 Blackstone, *Commentaries on the Laws of England,* *464-465.

> The concept of establishing different standards for a juvenile is an accepted legal principle since minors generally hold a subordinate and protected status in our legal system. There are legally and socially recognized differences between the presumed responsibility of adults and minors. Indeed the juvenile justice system, which deals with most offenses committed by those under eighteen, is substantially different in philosophy and procedure from the adult system. This State, like all the others, has recognized the fact that juveniles many times lack the capacity and responsibility to realize the full consequences of their actions. As a result of this recognition minors are unable to execute a binding contract, unable to convey real property, and unable to marry of their own free will. It would indeed be inconsistent and unjust to

hold that one whom the State deems incapable of being able to marry, purchase alcoholic beverages, or even donate their own blood, should be compelled to stand on the same footing as an adult when asked to waive important Fifth and Sixth Amendment rights at a time most critical to him and in an atmosphere most foreign and unfamiliar.

(Citations omitted.) *Lewis v. State*, 259 Ind. 431, 437, 288 N.E.2d 138 (1972).

**{¶ 66}** In light of the long-held understanding of the unique place juveniles occupy in the law and the Supreme Court's decisions in *Gault* and *Miranda*, state high courts, in the era in which R.C. 2151.352 was enacted, often held that the government may not use a juvenile's statement or confession at a subsequent trial or hearing unless the juvenile and the juvenile's parents were informed of the juvenile's rights to counsel and to remain silent. *See, e.g., People v. Burton*, 6 Cal.3d 375, 99 Cal.Rptr. 1, 491 P.2d 793 (1971); *Lewis* at 438; *In re S.H.*, 61 N.J. 108, 293 A.2d 181 (1972). The decisions of our sister, the Indiana Supreme Court, are illustrative of this history.

**{¶ 67}** By 1973, the Indiana high court would simply and succinctly announce, "[I]t is clear under the United States Supreme Court rule that a juvenile who is alleged to be delinquent is entitled to the assistance of counsel at any interrogation that may take place, and at the hearing before the juvenile judge at which disposition of this status is made." *Bridges v. State*, 260 Ind. 651, 653, 299 N.E.2d 616 (1973). Since then, it properly recognized that juveniles should be afforded safeguards that are in addition to those required by *Miranda* when subjected to custodial interrogation; those holdings were often codified into state statutes. *See, e.g.*, *D.M. v. State*, 949 N.E.2d 327, 333 (Ind.2011).

**{¶ 68}** The Indiana approach is consistent with our decision in *In re C.S.*, in which we more clearly enunciated our protective philosophy of juvenile justice

that recognizes the realities of modern delinquency proceedings. That philosophy is not reserved only for our courtrooms. Rather, it permeates custodial interrogation as well, consistent with the Supreme Court's teachings in *Miranda*, *Gault*, and *J.D.B.,* and the fundamental fairness that due process rights are intended to protect.

{¶ 69} The majority opinion defies law, logic, and common sense in suggesting that a statute that goes beyond constitutional requirements must be considered without any consideration of constitutional requirements.[6] Thus, the majority casts aside those constitutional commands, as well as our precedent, and reframes the issue before us as simply one of statutory language. In doing so, the majority approach impermissibly fails to consider the protections set forth in *Miranda* simply because M.W. purportedly waived those rights under the statute.

### CONCLUSION

{¶ 70} The General Assembly enacted R.C. 2151.352 in response to a series of directives from the United States Supreme Court calling for courts to ensure fundamental fairness in juvenile proceedings, including protecting juveniles' right, from custodial interrogation through adjudication, not to incriminate themselves. Given those purposes, the majority's construction of R.C. 2151.352 improperly vitiates the very purpose of the statute and thus violates the canon of statutory construction that forbids reading statutes in a manner that

---

6. The majority's opinion is curious, at best, given that its author dissented from the holding in *In re C.S.* because he concluded that the holding "invades the province of a parent's role in raising his or her child" and in making important decisions that have significant repercussions in the child's life. *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 125 (O'Donnell, J., dissenting). Undoubtedly, parents can play a critical role in assisting their minor children during a custodial interrogation, as the Supreme Court has made clear. *See, e.g.*, *Gallegos*, 370 U.S. at 54, 82 S.Ct. 1209, 8 L.Ed.2d 325; *Haley v. Ohio*, 332 U.S. 596, 599-600, 68 S.Ct. 302, 92 L.Ed. 224 (1948). But the majority's analysis here does not foreclose the use of a statement made by a 15-year-old boy who did not have the benefit of counsel or his parents or guardian during a custodial interrogation. The custodial interrogation is at least as important as the events that subsequently unfold in court, and given its repercussions, a child must be afforded the right to counsel and parents during that period.

leads to absurd results or that defeats the purpose for which the statute was passed. More importantly, it offends fundamental notions of due process and fairness.

**{¶ 71}** The majority's holding implicitly endorses a system in which the rights our federal and state constitutions were designed to protect, as expressed in *Miranda*, *Gault,* and *C.S.,* are offended. I cannot countenance such a holding, and thus I strongly dissent.

PFEIFER and MCGEE BROWN, JJ., concur in the foregoing opinion.

_____

William D. Mason, Cuyahoga County Prosecuting Attorney, and Daniel T. Van and Richard Hanrahan, Assistant Prosecuting Attorneys, for appellee, state of Ohio.

Timothy Young, State Public Defender, and Amanda J. Powell, Assistant Public Defender, for appellant, M.W.

Marsha L. Levick, urging reversal for amicus curiae Juvenile Law Center.

Kim Brooks Tandy, urging reversal for amicus curiae Children's Law Center.

Nadia Seeratan, urging reversal for amicus curiae National Juvenile Defender Center.

Joshua Tepfer, urging reversal for amicus curiae Center on Wrongful Convictions of Youth.

James L. Handiman, urging reversal for amicus curiae American Civil Liberties Union of Ohio.

_____