THE STATE OF OHIO *v.* SZALAI.

(No. 83TRC172—Decided September 12, 1983.)

Ashtabula County Court,
Eastern Division.

*Mr. John G. Cardinal,* prosecuting attorney, and *Mr. Philip D. Gerken,* for plaintiff.

*Mr. Lynn E. Richards* and *Ms. Sally E. Richards,* for defendant.

YOST, J. This case came on for further hearing on defendant's motion to suppress. From the testimony of Sgt. Joseph Bemme, it is quite clear, and apparently undisputed, that he arrived at the scene of a minor accident, observing the defendant's car off the roadway and on private property. Although he did not see the car being operated on the roadway, he did observe tire tracks leading off the road to the point to where the car was located. The defendant, Patricia Lee Szalai, told the officer that she was on her way home when she drove off the road. Her arrest occurred at approximately 3:15 a.m.

The defendant was transported to the Ashtabula County Sheriff's office, where she was advised of the consequences of refusing a chemical test, by the standard form prescribed by the Registrar of Motor Vehicles pursuant to R.C. 4511.191. This advice included the exhortation that her operator's license would be suspended for a period of six months if she refused the test. The defendant then submitted to a breath test. In a prior hearing on this matter the court found, from the evidence, that there was no showing of the chronological relationship between the time of driving on the public roadway and the point of being under the influence of alcohol. However, the court held that the officer's observation of the lights on, engine running, and the car rocking slightly, although stuck in the mud, would constitute operation of a vehicle at the time of the officer's observations.

The issues now raised by the defendant are:

1. Whether a chemical test can ever be given, where the operation occurred on private property and;

2. Whether the advice that the operator's license would be suspended upon refusal vitiates a consent to submit to a chemical test where the operation occurred on private property.

Since the alleged offense occurred on January 29, 1982, the court must construe the applicable statutes as they existed before the March 16, 1983 amendments.

In support of her position, defendant

cites several appellate decisions. *State* v. *Risner* (1977), 55 Ohio App. 2d 77 [9 O.O.3d 230], involved an accident situation in which the arresting officer did not observe the operation of the vehicle. The court concluded that the officer had sufficient evidence upon which to base a reasonable belief that the defendant was driving the vehicle. On the other hand, the court felt that the evidence of intoxication, as shown by the record, was insufficient. Therefore, the conviction was reversed. The court also stated, at page 80, that "[t]he arrest gives rise to the implied consent, which gives rise to the test, which gives rise to the presumption. The presumption cannot exist or have any probative value independently of a valid arrest." When taken out of context, this appears to be somewhat of an overstatement, although the reasoning of *Risner* may be compelling on its own facts. R.C. 4511.191 says nothing about the presumption to be derived from the test. The presumption which arises from the test exists by virtue of R.C. 4511.19. The so-called "implied consent statute," R.C. 4511.191, sets forth the circumstances under which a consent to a test is implied to have been given, and the procedures which must be followed, as well as the prerequisite factors which must exist, before a license suspension can be imposed for a refusal to submit to a test.

By its language, R.C. 4511.191 only operates to imply consent to a chemical test where there are "* * * reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways * * *," and it has been so held. *Crapser* v. *Andrews* (App. 1977), 5 O. O. 3d 402; *Koch* v. *Dollison* (1981), 2 Ohio App. 3d 141, 142. Therefore, R.C. 4511.191 has no operative effect in this case. The defendant's consent to the test cannot be implied. If she had refused the test, which of course she did not, no suspension could have been imposed, since the operation in question occurred on private property.

Given this conclusion, the next question is whether the arresting officer could even lawfully request that this defendant submit to a chemical test, on these facts. The court holds that there was no impropriety in requesting the test. R.C. 4511.19 applies to operation of any vehicle within this state, whether on a public road or private property.

The court recognizes that R.C. 4511.191(C) refers to "[a]ny person under arrest for the offense of driving a motor vehicle while under the influence of alcohol * * *." However, reading the various sections of this lengthy statute *in pari materia,* subsection (C) must relate to any person within the "implied consent" criteria set out in R.C. 4511.191(A).

R.C. 4511.19 also provides for admission of evidence "* * * on the concentration of alcohol in the defendant's blood * * * as shown by chemical analysis * * *." As previously stated, this is also the section which establishes the presumption to be drawn from the test result. Thus, the chemical test in any driving while intoxicated case can have significant evidentiary value.

In any other type of criminal prosecution, police officers are not precluded from obtaining physical evidence directly from the accused, so long as they act within constitutional parameters. Handwriting, hair samples, blood, or other bodily substances are examples of items that police can, and often do, seek to obtain for use as evidence in a criminal prosecution. See *Gilbert* v. *California* (1967), 388 U.S. 263; *United States* v. *Mara* (1973), 410 U.S. 19; *State* v. *Ostrowski* (1972), 30 Ohio St. 2d 34 [59 O.O.2d 62]; *State* v. *McGrew* (1971), 25 Ohio App. 2d 175 [54 O.O.2d 398]. Although this type of evidence has been held to be "nontestimonial," the taking of such evidence does amount to a search and seizure, so that the Fourth Amendment is implicated.

When evidence of a criminal offense is to be taken from a defendant, the Fourth

Amendment basically requires a search warrant, or an exception to the warrant requirement, or the consent of the defendant.

It is common, in criminal cases, to obtain a court order directing a defendant to submit a sample of a bodily substance. This is akin to a search warrant. Naturally, this would be impractical in driving while intoxicated cases, and it did not occur in this case. Due to the nature of the evidence sought in a driving while intoxicated case, *i.e.,* determination of concentration of alcohol in the blood, and the two-hour time constriction imposed by statute, an exigent circumstances exception to the warrant rule comes to mind. However, to compel a suspect to submit a bodily substance, even a sample of breath, strikes this court as a severe intrusion upon the person. Furthermore, R.C. 4511.191 recognizes a right to refuse the test, even in cases where, because of the factual circumstances, consent to take the test can be implied.

The court recognizes and agrees with the holding of *State* v. *Starnes* (1970), 21 Ohio St. 2d 38 [50 O.O.2d 84], that there is no violation of the Constitution resulting from the sanction of a license suspension upon a refusal to submit to a chemical test. However, this court does not interpret *Starnes,* or any other case decision of this state, to allow extraction of bodily substances over the objection of an accused person.

This leaves "consent" as a basis for obtaining a chemical test, and the defendant did consent to take a breath test in this case.

A search or seizure, based on consent, will be valid even if there was no probable cause to search. To have a valid consent, it is not necessary to warn a person of his Fourth Amendment rights. *Schneckloth* v. *Bustamonte* (1973), 412 U.S. 218. However, the consent must be voluntary. Consent will be determined to be involuntary if granted only in submission to authority, rather than as an understand-

ing, intelligent waiver. *Lakewood* v. *Smith* (1965), 1 Ohio St. 2d 128 [30 O.O.2d 482].

Where, as in the instant case, the defendant was told that a refusal to submit to a chemical test would result in a license suspension, which was actually incorrect, since the critical point of operation turned out to be entirely on private property, the court must hold that defendant's consent to the chemical test was not voluntary within a constitutional context. This result is also consistent with the *Risner* case, *supra.* The *Risner* court was primarily troubled by the arrest itself, but the court's statement, at page 80, is applicable:

"In the circumstances of this case, where actual consent was given, the actual consent was given after reading the implied consent form to the defendant advising him of the consequences of his refusal to a chemical test, and such consent cannot be said to be a voluntary consent sufficient to eliminate the requirement of arrest as a condition precedent to the giving of the chemical test and the raising of the presumption dependent on the result of that test."

It is noted that the United States Supreme Court may not agree with this conclusion. In *Schmerber* v. *California* (1966), 384 U.S. 757, that court held, in a driving while intoxicated case, that the Fourth Amendment was not violated by the extraction and testing of a blood sample, over the defendant's objection. The court states that the officer in that case "* * * might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence' * * *." *Id.* at 770. The court also found that the test chosen and the manner in which it was performed were reasonable.

Although the Ohio Supreme Court has cited *Schmerber, supra,* for the proposition that there is no right to refuse a chemical test in the driving while intox-

icated context (*State* v. *Starnes, supra; Westerville* v. *Cunningham* [1968], 15 Ohio St. 2d 121 [44 O.O.2d 119]), it has not gone so far as to hold that a bodily substance may be taken for testing, over a defendant's objection, without a warrant or court order. These cases do not deal with the physical fact of whether or not a test is actually taken. They concern the legal ramifications of refusing a test, such as the constitutionality of the resulting operator's license suspension or of comment on the refusal by the prosecution at trial.

*Schmerber* v. *California, supra,* is not applicable to the instant case, for the following reasons:

1. The defendant was given an opportunity to refuse the test;

2. Although the defendant elected to take the test, her decision to do so was tainted by the advice, which turned out to be inaccurate;

3. Under R.C. 4511.191, there is a statutory right to refuse to physically submit to a chemical test. It would be incongruous to hold that where 4511.191 is not applicable, there should be no right to refuse.

In summary, it is imperative, in any arrest for driving while intoxicated, that the law enforcement authorities carefully distinguish whether the "operation" in question took place on public or private property. When on public property, the advice contained in R.C. 4511.191 *must* be given. When on private property, the advice contained in R.C. 4511.191 *cannot* be given. The failure to observe this distinction and abide by the technical legal requirements will result in exclusion of any chemical test result.

The court is sympathetic to the plight of the arresting officer in this case, since the facts do give reason to believe that the defendant had been operating on a public roadway. However, without evidence of the time of this operation, the test result is inadmissible for the purpose of relating to defendant's earlier operation of her vehicle. It is only for this reason that the point of operation on private property becomes critical to the admission of the test result.

In conclusion, this court echoes Judge McCormac, in his opinion in *Koch* v. *Dollison* (1981), 2 Ohio App. 3d 141, 143, where he notes that a proposed amendment, by the Ohio State Bar Association, "* * * to R.C. 4511.191 to make implied consent applicable for operation of a motor vehicle within the state, eliminating the provision that it must be on a public highway, * * * would make the implied consent law consistent with R.C. 4511.19 as amended in 1975." Unfortunately, the amendments of March 16, 1983, to both R.C. 4511.19 and R.C. 4511.191, retain this inconsistency.

For the reasons stated herein, defendant's motion to suppress the result of the intoxilyzer test is sustained and the test result is hereby suppressed from use as evidence at trial.

*Motion to suppress sustained.*