[Cite as *State v. Mullins*, 2021-Ohio-3683.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                        |   | JUDGES:                     |
|------------------------|---|-----------------------------|
| STATE OF OHIO          | : | Hon. W. Scott Gwin, P.J.    |
|                        | : | Hon. John W. Wise, J.       |
| Plaintiff-Appellee     | : | Hon. Earle E. Wise, J.      |
|                        | : |                             |
| -vs-                   | : |                             |
|                        | : | Case No. 2021 CA 00024      |
| MICHAEL MULLINS        | : |                             |
|                        | : |                             |
| Defendant-Appellant    | : | OPINION                     |


CHARACTER OF PROCEEDING:    Criminal appeal from the Licking County
Municipal Court, Case No. 20-TRC-05636


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    October 13, 2021


APPEARANCES:

For Plaintiff-Appellee

DOUGLAS E. SASSEN
LAW DIRECTOR
BY: J. MICHAEL KING
40 West Main Street
Newark, OH 43055

For Defendant-Appellant

ROBERT E. CALESARIC
35 South Park Place, Suite 150
Newark, OH 43055

*Gwin, P.J.*

{¶1}    Defendant-appellant Michael Mullins ["Mullins"] appeals from the February 1, 2021 Judgment Entry of the Licking County Municipal Court overruling his Motion to Suppress evidence.

*Facts and Procedural History*

{¶2}    On September 5, 2020, National Trail Raceway near Kirkersville, Licking County, Ohio, was open to the public for an "SFG" drag racing event.  A ticket booth was selling tickets for admission to the event. There was no separate parking fee. The main entrance was open, with two lanes going in and two lanes for exit.

{¶3}    Deputy Ben Martens testified that he was dispatched to National Trail Raceway for an auto accident. When he arrived he observed two damaged golf carts. The golf carts had been damaged when Mullins backed up his vehicle and struck them. Deputy Martens stated he found an opened bottle of Crown Royal, Red Bull, and White Claw in Mullins's vehicle. Deputy Martens detected an odor of alcohol from Mullins which he described as "pretty strong."  Deputy Martens stated Mullins had bloodshot eyes. Mullins repeatedly declined field sobriety tests, admitted he had "two adult beverages," and stated he didn't feel safe to drive. Deputy Mullins testified that Mullins did not exhibit slurred speech or difficulty standing or walking. Much of the foregoing was captured on the Deputy's dash camera.  It was played during the suppression hearing, and admitted into evidence.

{¶4}    Kimberly Barnhill witnessed the incident. She stated she believed the accident occurred sometime between 9:30 and 10:00 p.m. She also testified that someone called law enforcement almost immediately and that law enforcement arrived in

less than five minutes. Deputy Martens testified that he was dispatched to the raceway at about 10:56 p.m., and he arrived at the raceway within four or five minutes.

{¶5} Mullins was arrested at 11:17 p.m. Deputy Martens read Mullins BMV form 2255 at 11:57 p.m. After being read the BMV 2255 form Mullins indicated he would provide a breath sample. He was transported to the Hebron Police Department, where his first sample registered as invalid. A second test was completed at 12:35 a.m. That test indicated .096 grams of alcohol per 210 liters of his breath. Mullins was charged with OVI in violation of RC 4511.19(A)(1)(a) ("under the influence") and Improper Backing in violation of R.C. 4511.38. The state filed a motion to amend the citation to a "per se" breath test case pursuant to RC 4511.19(A)(1)(d). The trial court granted the motion by Judgment Entry filed November 24, 2020. On December 1, 2020, Mullins filed a motion to suppress. On January 5, 2021, the court took evidence on the motion.

{¶6} Mullins testified at the suppression hearing. On direct examination he testified that he took the test because he was in fear of losing his license for a year. On cross-examination, he admitted he took the test because he thought he would pass it.

{¶7} By Judgment Entry filed February 1, 2021 the trial court overruled the motion.

### Assignment of Error

{¶8} Mullins raises one Assignment of Error,

{¶9} "I. TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION TO SUPPRESS BECAUSE THE THREAT OF A LICENSE SUSPENSION WAS UNLAWFUL."

**STANDARD OF APPELLATE REVIEW – MOTION TO SUPPRESS**

{¶10}   Appellate review of a motion to suppress presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See, State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995); *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers."  *Ornelas, supra* at 698, 116 S.Ct. at 1663.

*Law and Analysis*

{¶11}   In his sole Assignment of Error Mullins contends that the trial court erred by denying his motion to suppress. Specifically, Mullins contends that because the raceway was private property is was error for Deputy Martens to read Mullins the BMV form 2255.

Mullins argues that he only submitted to the BAC test because he was in fear of losing his license for a year if he refused. Mullins contends that because the property where the operation took place was "private property," the reading of BMV form 2255 form was "coercive."[1]

**ISSUE FOR APPELLATE REVIEW:** *Whether Deputy Martens was required to read BMV form 2255 to Mullins.*

{¶12} The Ohio Legislature has adopted a statutory scheme whereby anyone who operates a motor vehicle on a public roadway is presumed to have given consent to chemical testing pursuant to R.C. 4511.191(A)(2):

Any person who operates a vehicle, streetcar, or trackless trolley upon a highway or any public or private property used by the public for vehicular travel or parking within this state or who is in physical control of a vehicle, streetcar, or trackless trolley shall be deemed to have given consent to a chemical test or tests of the person's whole blood, blood serum or plasma, breath, or urine to determine the alcohol, drug of abuse, controlled substance, metabolite of a controlled substance, or combination content of the person's whole blood, blood serum or plasma, breath, or urine if arrested for a violation of division (A) or (B) of section 4511.19 of the Revised Code, section 4511.194 of the Revised Code or a substantially equivalent municipal ordinance, or a municipal OVI ordinance.

{¶13} Pursuant to R.C. 4511.192 a person who is arrested for OVI must be informed,

---

[1] Additional issues were raised in the motion to suppress which are not assigned as errors in this appeal.

"You now are under arrest for (specifically state the offense under state law or a substantially equivalent municipal ordinance for which the person was arrested--operating a vehicle under the influence of alcohol, a drug, or a combination of them; operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance; operating a vehicle after underage alcohol consumption; or having physical control of a vehicle while under the influence).

If you refuse to take any chemical test required by law, your Ohio driving privileges will be suspended immediately, and you will have to pay a fee to have the privileges reinstated. If you have a prior conviction of OVI, OVUAC, or operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance under state or municipal law within the preceding twenty years, you now are under arrest for state OVI, and, if you refuse to take a chemical test, you will face increased penalties if you subsequently are convicted of the state OVI.

(Read this part unless the person is under arrest for solely having physical control of a vehicle while under the influence.) If you take any chemical test required by law and are found to be at or over the prohibited amount of alcohol, a controlled substance, or a metabolite of a controlled substance in your whole blood, blood serum or plasma, breath, or urine as set by law, your Ohio driving privileges will be suspended immediately, and you will have to pay a fee to have the privileges reinstated.

If you take a chemical test, you may have an independent chemical test taken at your own expense."

R.C. 4511.192(B). That information is contained in BMV form 2255.

{¶14} In the case at bar, the racetrack was holding what could be described as a sporting event. Members of the public were invited to attend and were charged an admission fee for attending. For purposes of the event, therefore, the property was open to the public, and the public was invited to enter the property to attend the event.

{¶15} In any event, whether the property can be classified as "public" or "private" is somewhat a moot point. It should be noted that the cases relied upon by Mullins to support his argument, *State v. Szalai*, 13 Ohio Misc.2d 6, 13 OBR 142, 468 N.E.2d 396(1983) and *State v. Chard*, 6th Dist. Lucas L–83–308, 1984 WL 7788(Feb. 24, 1984), " were decided at a time when the implied consent statute applied only to public highways. The legislature later amended the statute to make it applicable to "a highway or any public or private property used by the public for * * * vehicular travel or parking."  R.C. 4511.191(A)." *State v. Gottfried,* 86 Ohio App.3d 106, 109, 619 N.E.2d 1185(6th Dist. 1993).  Further in *State v. Decroce,* 11th Dist. Geauga No. 93-G-1816, 1994 WL 102252(Mar. 18, 1994), also relied upon by Mullins, the appellant had been stopped and arrested in the private driveway of his home.  Clearly, in the case at bar the property was "used by the public for vehicular travel or parking", at the time Mullins was stopped and arrested and therefore it fell within the purview of R.C. 4511.191.

{¶16} Deputy Martens was required by law to read Mullins BMV form 2255. Informing the accused of the consequences of both refusing to take a chemical test or taking a test and testing over the prohibited amount can hardly be coercive. The

information given in BMV form 2255 simply states the law in Ohio and allows one arrested for OVI to make an intelligent choice of whether to consent to the test or refuse the test.

{¶17} Mullins's sole Assignment of Error is overruled.

{¶18} The judgment of the Licking County Municipal Court is affirmed.

By Gwin, P.J.,

Wise, John, and

Wise, Earle, J., concur